OPINION OF THE COURT
Vincent R. Balletta, J.
This is a special proceeding brought by the petitioner as a minority shareholder in the respondent corporations (hereinafter referred to collectively as Gift Pax) pursuant to section 1104-a of the Business Corporation Law. This section provides that a holder of 20% or more of the outstanding shares of a corporation may petition for dissolution on the following grounds:
“(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;
*831 “(2) The property or assets of the corporation are being looted, wasted, or diverted for non-corporate purposes by its directors, officers or those in control of the corporation.” (Business Corporation Law, § 1104-a, subd [a].)
The proceeding was commenced by order to show cause on March 28, 1980 and on April 3, 1980 the respondent corporations elected to purchase the petitioner’s shares in Gift Pax pursuant to section 1118 of the Business Corporation Law which states:
“§ 1118. Purchase of petitioner’s shares; valuation
“(a) In any proceeding brought pursuant to section eleven hundred four-a of this chapter, any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court.
“(b) If one or more shareholders or the corporation elect to purchase the shares owned by the petitioner but are unable to agree with the petitioner upon the fair value of such shares, the court, upon the application of such prospective purchaser or purchasers, shall stay the proceedings brought pursuant to section 1104-a of this chapter and determine the fair value of the petitioner’s shares as of the day prior to the date on which such petition was filed, exclusive of any element of value arising from such filing.”
Thereafter, the petitioner urged this court to declare that any determination as to their “fair value” be made in accordance with section 623 of the Business Corporation Law. By memorandum decision and order dated July 24, 1980, this court held that the procedures outlined in section 623 concerning the shareholder’s right to receive payment were not applicable to section 1118, since the statutes were enacted to protect diametrically opposed interests. While section 623 seeks to protect a dissenting minority shareholder whose interest in a corporation is being changed as a result of actions taken by the majority, section 1118 was enacted to protect majority shareholders so that they may buy out a minority shareholder who seeks dissolution under section 1104-a (subd [a], par [2]). As *832 stated in my prior opinion: “The option is theirs, not the minority shareholders. They may waive their rights by inaction, not the accusing shareholder.”
In the memorandum decision, this court went on to state that the court would set the details and particulars as to what form the judgment would ultimately take, and the matter was referred to Robert S. Forman, Esq., as referee, to hear and report on the fair value of petitioner’s shares as of the day prior to the date on which the petition was filed, exclusive of any element of value arising from such filing.
My decision was affirmed by the Appellate Division (79 AD2d 636), wherein the court stated in part (at p 637), that not incorporating section 623 would not prevent the court “in appropriate cases, from making such order as justice requires.”
Referee Forman conducted extensive hearings in this matter covering 24 days. Three experts testified at the hearing, one on behalf of the petitioner, one on behalf of the respondents, and a third independent witness from Peat, Marwick, Mitchell & Co. Peat, Marwick & Mitchell had been selected by the referee to act as his own independent expert. The referee largely based his report upon the findings of the independent expert.
On May 17,1983, the referee filed his amended report in which he found the fair value of the petitioner’s shares to be $2,209,321. In making his determination, the referee considered the following three elements: (1) net asset value; (2) market value; and (3) investment value. Although he considered these three elements, he ascribed no weight to the market value element since the shares in the corporation are not publicly or freely traded. He rather concentrated on the net asset value and investment value of the petitioner’s shares.
There are now before the court three motions, the first by the referee to fix his fees in the matter, and a motion and cross motion by the respondents and the petitioner respectively, to confirm in part and disaffirm in part the referee’s report.
With respect to the motions by the respondents and petitioner, the respondents argue that the report should be *833 confirmed insofar as it fixes the fair value of the petitioner’s shares in the sum of $1,448,553. The respondents argue that the report should be disaffirmed insofar as it recommends a higher figure, and further, insofar as it fails to recommend a covenant not to compete and a covenant against customer solicitation.
The petitioner, in his cross motion, argues that the fair value of the petitioner’s shares as found by the referee is too low, and that it should be $2,731,200. Petitioner also urges that the report be disaffirmed insofar as it only provides for statutory and not equitable interest and insofar as it apportions the costs of these proceedings, including the referee’s fees, on an equal basis.
Initially, the respondents raise a procedural objection to the petitioner’s cross motion. They argue that the cross motion should not be considered by the court since the motion was made after the expiration of the 15-day time period contained in CPLR 4403. The failure of the petitioner to move within this time period, however, will not preclude consideration of the issues raised on the cross motion. As indicated by the Appellate Division, Second Department, in Matter of Breland (MVAIC) (24 AD2d 881), failure to move within the 15 days is not fatal to the court’s inherent power to either confirm all or confirm part, or otherwise act with respect to a referee’s report. Accordingly, the court will now consider the arguments raised by the parties on their merits.
The key to the decision in this proceeding is a determination as to what is the “fair value” of the petitioner’s shares. Although a precise and exacting definition of the term “fair value” might be somewhat difficult to formulate, there can be no doubt but that the referee correctly determined that there are three basic elements which must be considered by a court in determining fair value, i.e., market value, net asset value, and investment value. (Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585.) This does not, however, mean that equal weight, or any weight at all, must be given to each of the afore-mentioned elements. (Matter of Endicott Johnson Corp. v Bade, supra.)
In the instant proceeding, the parties are not in dispute that no weight was to be attributed to the market value of *834 the stock since there are only three equal shareholders and the stock is not readily or publicly traded. As to the net asset value component, there is no real dispute as to the findings of the referee. The sole valuation dispute between the parties involves the referee’s determination of investment value. On this point the respondents suggest the referee made the following two errors: (1) he failed to apply an illiquidity discount of 25%; and (2) his price earnings ratio of 6.0 was inappropriate and he should have used a 4.3 price earnings ratio instead. The petitioner alleges one error in this area. He argues that the referee improperly refused to apply an acquisition premium of 44.6%.
In determining investment value, the referee refused to take into consideration any discount for illiquidity or lack of marketability. In doing so, the referee followed the recommendation of Peat, Marwick, Mitchell & Co. The individual witness produced from Peat, Marwick & Mitchell indicated that he did not apply any illiquidity discount since the respondents, by electing to purchase the petitioner’s shares under section 1118, became the willing and available buyers. This court can certainly understand the referee’s position in not applying an illiquidity discount. However, this failure on the part of the referee to apply an illiquidity discount flies in the face of the clear and unambiguous language of the statute, and this portion of his report cannot be confirmed. Indeed, as indicated above, subdivision (b) of section 1118 of the statute specifically provides that the court shall determine “fair value of the petitioner’s shares as of the day prior to the date on which such petition was filed, exclusive of any element of value arising from such filing.” In this proceeding, the petition was filed on March 28, 1980; therefore, the valuation date is March 27, 1980. The referee’s expert and the referee, in failing to apply an illiquidity discount by reason of the fact that the respondents were the purchasers of the petitioner’s shares, improperly made April 3, 1980 the date of the respondents’ election to purchase the shares as the date of valuation. Furthermore, the explicit language contained in the statute requiring that there be no consideration given to either an increase or diminution in value arising from the filing of the petition, was also violated when an illiquidity discount was not applied. Indeed, on this issue, the *835 independent expert testified that the sole reason he did not impose an illiquidity discount was that Gift Pax elected to purchase under section 1118. Clearly, he was increasing fair value based upon Gift Pax’s election, and this he could not do.
The petitioner’s reliance upon Brown v Allied Corrugated Box Co. (91 Cal App 3d 477), for the proposition that a lack of marketability discount is inappropriate where the corporation has elected to purchase, is misplaced. The California statute relied upon by the court in that case is not similar to the language found in our New York statute. The California statute does not require a valuation to be made as of the day prior to the filing of the petition, nor does it contain the affirmative mandate that no consideration be given to the filing of the petition itself. Both of these requirements are contained in section 1118, and in not applying an illiquidity discount, the referee and his expert failed to comply with the statute.
Accordingly, it is the decision of this court that on the issue of lack of marketability, there was sufficient evidence presented which required the referee to apply a 25% lack of marketability discount in determining the fair value of the petitioner’s shares.
Turning to the respondents’ second objection, to wit, the application of a 6.0 price earnings ratio rather than 4.3, the court is convinced, after reviewing all of the credible evidence, including the opinions of the experts of both parties as well as that of the referee’s expert, that selecting the figure of 6.0, which was somewhat between the figure the petitioner and the respondents each urged, was well within the discretion of the referee and proper, when viewing the comparison companies offered by all three experts. On this point, the court notes in passing that if the price earnings ratio suggested by the respondent is accepted, then, after the application of the illiquidity discount, the respondents would be receiving very little over and above liquidation value, which is something not intended by the statute. Accordingly, the referee’s report, insofar as it applies to a price earnings ratio of 6.0, will be confirmed.
The only remaining issue with respect to the referee’s determination of fair market value is that raised by the *836 petitioner wherein he seeks to have this court disaffirm the referee’s report insofar as it failed to place a 44.6% acquisition premium on the fair market value. In this regard, the petitioner’s expert testified that in determining the fair value of the petitioner’s stock, an acquisition premium would be appropriate. Furthermore, the referee’s expert indicated that in evaluating fair market value of the stock of Gift Pax, an acquisition premium would properly be applied if there was a sale of the corporation to a willing buyer. The referee’s expert, however, did not include such an acquisition premium since it was valuing only the petitioner’s shares. This is precisely the point as to why an acquisition premium is not appropriate. Pursuant to the statute, the evaluation of the corporation itself is not being made, but rather an evaluation of the petitioner’s shares. Indeed, an acquisition premium itself contemplates a sale of the entire corporation to an outside third party who is a willing buyer and who generally might be assumed to pay a somewhat inflated price or an acquisition premium in exchange for his “capturing” the assets of the corporation and in obtaining a target corporation’s entire business. In this case, however, the entire corporation is not being sold but rather the petitioner’s shares, and it is these shares which have to be valued. It can hardly be said that one would be willing to pay an acquisition premium to acquire one third of the stock in Gift Pax. There simply would be no incentive for this on the part of a willing buyer. Accordingly, the referee’s report on this issue is confirmed.
In addition to the errors urged by the parties as to the valuation itself, the respondents argue that the referee improperly failed to recommend prohibitions against competition and customer solicitation. The petitioner contends that equitable interest, rather than statutory interest, is appropriate and that all the costs of the within proceeding should be borne by Gift Pax.
With respect to the restrictive covenants, the respondents principally rely upon Purchasing Assoc. v Weitz (13 NY2d 267) and Mohawk Maintenance Co. v Kessler (52 NY2d 276) and section 1118, which provides that the court can impose such terms and conditions of the sale as are just. The respondents argue that since the valuation is *837 based on what a willing purchaser will pay to a willing seller, there is no way, on the open market, that a purchaser would buy a company such as Gift Pax without first extracting these covenants. The respondents urge that these covenants should be imposed as a matter of law. The respondents’ reliance on Purchasing Assoc, and Mohawk is misplaced. Purchasing Assoc, stands for the proposition that courts will enforce covenants not to compete when they are contained in a contract, and Mohawk indicates that where there is a sale of the good will of an entire business, the court will imply a covenant not to solicit existing customers of the business.
In the instant proceeding, only the petitioner’s shares are being transferred. The entire corporation is not being sold to an outside party. Just as this court has determined that it would be inappropriate to apply an acquisition premium on those grounds, and just as this court has determined that an illiquidity discount must be applied because it is not a sale of the ongoing business, there is no reason for this court to impose on the petitioner any restrictive covenants since he is clearly not getting the value of a sale to an outside third party which might entitle him to an acquisition premium or the nonapplication of an illiquidity discount.
With respect to the petitioner’s objections as to interest and the imposition of costs, pursuant to CPLR 5001, in a proceeding of an equitable nature such as this, the court is empowered to fix the rate of interest. There is no dispute that since the date of the respondents’ election to purchase, interest rates have been running much higher than the legal rate of interest fixed by the referee in his report. Furthermore, during this period of time, the respondent corporations have had the use of the respondents’ money. Accordingly, it is the determination of this court that justice and equity require that the respondents pay interest on the fair value of the petitioners’ shares at the rate of 12% per annum.
Additionally, as to the issue of apportionment of costs, including the referee’s fee and those of the referee’s expert, Referee Forman, in his report, in denying the request for an equitable apportionment, questioned whether if there *838 were 10 shareholders, the apportionment against the petitioner would only be 10%. This question, however, misses the point. There are three equal shareholders in Gift Pax and it would be equitable to apportion all the costs of this action one third against the petitioner and two thirds against the respondents, based not upon the number of' shareholders, but based upon the percentage of shares owned by each of the individuals in the corporation. Indeed, in this proceeding, the court could not, on the papers before it, make a determination as to the fault of any of the individuals, and in the absence of such a determination, the afore-mentioned equitable apportionment is appropriate.
In all other respects, except as indicated herein, the referee’s report is confirmed.
As to the referee’s motion for fees and disbursements, said motion is determined in a short form order signed simultaneously herewith.
The respondents are directed to pay to the petitioner the sum of $1,656,991, plus interest at the rate of 12% per annum from April 3,1980 to the date of the payment. As of April 2, 1984, principal and interest totals the sum of $2,452,346.68. Said payment shall be made by cash or certified or official bank check, within 30 days after service of a copy of the judgment to be entered herein upon the attorney for the respondents. Upon tender of payment, petitioner is directed to forthwith transfer all of his shares to respondents and execute any and all documents necessary to effect the transfer.