In the Matter of WILLIAM R. FLEISCHER, as Holder of More Than 20% of All Outstanding Shares Entitled to Vote in an Election of Directors of Gift Pax, Inc., Respondent-Appellant. GIFT PAX, INC., et al., Appellants-Respondents.

Second Department, February 25, 1985

98

**APPEARANCES OF COUNSEL**

*Proskauer, Rose, Goetz & Mendelsohn* (*Stephen Rackow Kaye* and *Bruce E. Fader* of counsel), for appellants-respondents.

*Ballon, Stoll & Itzler* (*Frederick E. M. Ballon* and *Richard Weinberger* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

THOMPSON, J.

I

This appeal, as in *Matter of Blake v Blake Agency* (107 AD2d 139), requires us to determine whether Special Term correctly valued a minority interest in the shares of closely held corporations where the minority shareholder has commenced a special proceeding pursuant to Business Corporation Law § 1104-a to dissolve the corporations and the corporations have avoided dissolution by electing to buy out the minority shareholder pursuant to Business Corporation Law § 1118. Specifically, we must determine whether Special Term was correct in its conclusion that the fair value of petitioner William R. Fleischer's one-

third interest in the shares of appellants-respondents (collectively known as Gift Pax) was $1,656,991 as of the date prior to the commencement of the proceeding; whether Special Term correctly awarded interest of 12% per annum on said sum from March 27, 1980; and whether Special Term erred in not imposing all of petitioner's costs and expenses, including attorneys', experts', and referee's fees, on Gift Pax. Additionally, we must determine whether Special Term should have restrained petitioner from entering into competition with Gift Pax and from soliciting Gift Pax' present customers.

## II

Gift Pax is engaged in the business of distributing packages of various consumer products, with an emphasis on infant-care products. The distribution of samples of infant-care products accounts for approximately two thirds of its revenues and three fourths of its profits.

On March 28, 1980, petitioner William R. Fleischer, the owner of one third of the common stock of Gift Pax, filed a petition for dissolution of Gift Pax pursuant to Business Corporation Law § 1104-a. Petitioner contended, *inter alia,* that he was effectively "squeeze[d] * * * out" of the affairs of the corporation because of the misconduct of the other two shareholders of Gift Pax, Mitchell Barash and Harry Minkoff. On April 3, 1980, Gift Pax, Inc., adopted a corporate resolution electing to purchase petitioner's one-third minority interest in the corporations pursuant to Business Corporation Law § 1118 (a). Subsequently, Special Term (Balletta, J.), by order dated July 24, 1980, *inter alia,* referred the matter to Robert S. Forman, Esq., to act as a referee to hear and report on the fair value of petitioner's interest in Gift Pax as of March 27, 1980, the day prior to the filing of the petition, as required by the statute (Business Corporation Law § 1118 [b]).[*]

After conducting lengthy valuation proceedings, at which experts for the parties and an expert retained by the referee testified, Referee Forman reported to the court that the "fair value" of petitioner's shares in Gift Pax was $2,209,321. Upon a motion and cross motion to modify the referee's report, and after oral argument before the court, Special Term (Balletta, J.), modified the referee's report by reducing the referee's reported figure of "fair value" to $1,656,991. This reduction occurred because the court applied a 25% lack of marketability or illiquidity discount to the value of petitioner's shares. The court

---

[*] Stated portions of that order were affirmed by this court in *Matter of Fleischer (Gift Pax)* (79 AD2d 636).

confirmed the referee's valuation of petitioner's shares in all other respects (*Matter of Gift Pax,* 123 Misc 2d 830, 838). In addition, the court refused to add an "acquisition premium" of 44.6% to the value of the shares (*Matter of Gift Pax, supra,* pp 835-836), and refused to impose covenants restricting petitioner from competing with or soliciting the customers of Gift Pax. The court granted interest at the rate of 12% per annum upon the sum which it determined to be the "fair value" of petitioner's shares in Gift Pax, and imposed one third of the costs, referee's fees and the referee's expert's fees on petitioner and two thirds on Gift Pax (*Matter of Gift Pax, supra,* pp 837-838).

### III

Gift Pax contends on appeal that the court erred in failing to impose restrictive covenants on petitioner, enjoining him from competing with Gift Pax or soliciting its customers. Specifically, it argues that petitioner should not be permitted to ignore the approximately $400,000 of goodwill which it contends is a component part of the fair value of petitioner's interest in the corporations. It contends that petitioner, having been paid a substantial amount for his interest in the goodwill of the business, should be compelled to leave the goodwill intact by way of a noncompetition requirement.

Petitioner contends on his cross appeal that the referee and Special Term erred by not applying the valuation methodology proposed by his expert ("discounted cash flow analysis" and evaluation on a "freely traded minority share basis") at the valuation proceeding. He further contends that Special Term erred by (1) reducing the value of his shares by a 25% lack of marketability discount; (2) failing to add a 44.6% acquisition premium to the fair value of his shares; (3) failing to award a higher "market" rate of interest; and (4) failing to impose all of his costs, expenses and fees incurred in litigating the instant proceeding upon Gift Pax.

Addressing petitioner's contentions first, it is clear that the method of valuation employed by the referee in formulating the value of petitioner's shares, to wit, multiplying various components of Gift Pax' income by an average price-earnings ratio of comparable publicly traded corporations, and adding to that figure sums based on the adjusted net assets and marketable securities portfolio of the corporations comported with acceptable methods of valuation of minority interests in closely held corporations. We therefore find no basis for disturbing the referee's findings.

■ Special Term did not err in reducing the value of petitioner's shares, as reported by the referee, by applying a discount of 25% for lack of marketability. In determining the "fair value" of the shares of a closely held corporation, discounts for the lack of marketability of such shares are appropriate and do not provide a windfall to the majority shareholders merely because the shares to be purchased by the majority pursuant to their election under Business Corporation Law § 1118 constitute a minority interest in the corporation (*see, Matter of Blake v Blake Agency,* 107 AD2d 139, *supra* [decided herewith]). We note that petitioner argues on appeal that Special Term applied a minority interest discount to the value of the shares. This is simply not so. What was applied was a lack of marketability discount (*cf. Matter of Blake v Blake Agency, supra*). Special Term also correctly refused to add an acquisition premium to the value of petitioner's shares. The record clearly indicates that such premiums are paid only when 100% of the stock or controlling interest in the stock of a corporation is acquired. In the case at bar, Gift Pax is acquiring only one third of its common stock. Therefore, no premium should be added.

■ Finally, contrary to petitioner's contention, Special Term properly exercised its discretion in awarding interest at the rate of 12% per annum, and in apportioning the costs and referee's fees of the proceeding based on the percentages of stock owned by the respective parties. The determination of the rate of interest to be awarded and the apportionment of the costs of litigating such a proceeding is vested within the sound discretion of Special Term (*see, Matter of Blake v Blake Agency, supra*), and under the circumstances presented herein, Special Term did not abuse its discretion in reaching that determination.

■ Turning to Gift Pax' contention that restrictive covenants should have been imposed on petitioner, we have concluded that Special Term was correct in refusing to impose such covenants. The "fair value" of petitioner's interest in Gift Pax in this case was determined primarily by multiplying corporate income by an average price-earnings ratio of comparable publicly traded companies. Unlike *Matter of Blake v Blake Agency (supra)*, there was no express or implied computation of the value of corporate goodwill or of petitioner's share of said goodwill. Because goodwill was not a factor in the computation of the "fair value" of petitioner's interest, we perceive no reason to impose a restrictive covenant on petitioner. We further note that there is no specific statutory authority to impose such a restrictive covenant, and there is also no prior written agreement amongst the parties with regard to a noncompetition pact.

Gift Pax, in seeking to impose a restrictive covenant upon petitioner limiting his right to compete, relies on *Mohawk Maintenance Co. v Kessler* (52 NY2d 276). The court in *Mohawk,* after noting that written covenants executed by a seller of a business interest to refrain from competing with his former company may be enforced, held that the law may also impose a restraint upon the seller that he not actively solicit his former company's customers even in the absence of an express agreement, where the sale of the goodwill of the business is involved. The doctrine enunciated in *Mohawk (supra)* should be applied, however, only where a sale of goodwill is involved. As noted herein, there was no goodwill component to the award in this case, so *Mohawk* is inapplicable under the circumstances. Special Term was therefore correct in declining to require petitioner to deliver a covenant not to compete and in refusing to restrain him from actively soliciting Gift Pax' customers.

MOLLEN, P. J., TITONE and WEINSTEIN, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Nassau County, entered April 24, 1984, affirmed, insofar as appealed from, without costs or disbursements.