■ MGM COURT REPORTING SERVICE, INC., Respondent-Appellant, v STANLEY GREENBERG et al., Appellants-Respondents. —In an action, *inter alia,* to recover damages for breach of an implied covenant not to solicit the plaintiff's clients, (1) the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Levitt, J.), dated August 19, 1987, as denied their motion for summary judgment dismissing the complaint and (2) the plaintiff cross-appeals, as limited by its brief, from so much of the same order as denied its cross motion for summary judgment on the first cause of action and for dismissal of the defendants' counterclaim.

Ordered that the order is modified, on the law, by (1) granting the defendants' motion for summary judgment dismissing the complaint and (2) granting that branch of the plaintiff's cross motion for summary judgment which was for dismissal of the defendants' counterclaim; as so modified, the order is affirmed, with one bill of costs to the defendants.

The defendant Stanley Greenberg (hereinafter Greenberg) was a 40% shareholder in the plaintiff corporation, MGM Court Reporting Service, Inc. (hereinafter MGM), which provides stenographic reporting services. The remaining 60% of the shares of stock was held by Michael Yesner. Due to an alleged oppressive campaign engaged in by Yesner to freeze Greenberg out of the business, Greenberg commenced a proceeding in August 1984, pursuant to Business Corporation Law § 1104-a, seeking dissolution of MGM. In response to Greenberg's petition for dissolution, Yesner and MGM elected, as was their right pursuant to Business Corporation Law § 1118 (b), to purchase the shares owned by Greenberg at their fair value, rather than have the corporation dissolved. A trial on the issue of the fair value to be paid to Greenberg for his shares was then scheduled. However, on December 31, 1984, a settlement was reached by the parties. The settlement agreement provided, *inter alia,* that the "fair value and purchase price" of Greenberg's shares was $175,000. MGM's payment was in the form of a promissory note dated December 31, 1984, which note was delivered to Greenberg at the closing on January 24, 1985. Subsequently, Greenberg went into the court reporting service business in his own right under the name of Precise Court Reporting Service, Inc. (hereinafter Precise), the codefendant herein, and apparently began soliciting the plaintiff's clients.

The instant action was commenced by MGM against Greenberg and Precise. The complaint alleged five causes of action,

viz., (1) breach of an implied restrictive covenant not to impair the good will of the plaintiff by soliciting the plaintiff's clients (There is a limited express covenant in the agreement prohibiting Greenberg from performing management services for three court reporting companies. The complaint does not allege any breach of that expressed limited covenant.), (2) intentional interference with the plaintiff's contractual and business relationships, (3) conversion of the plaintiff's confidential customer list and confidential business information, (4) intentional infliction of economic harm and (5) a breach of Greenberg's duty of loyalty as a former shareholder of MGM. The defendants' answer contained a counterclaim seeking damages for malicious prosecution.

The defendants moved for summary judgment dismissing the complaint, and "severing and continuing" their counterclaim. Thereafter, the plaintiff cross-moved, *inter alia,* for summary judgment on the first cause of action and for dismissal of the counterclaim. The motion and cross motion were denied.

It is well settled that when one voluntarily sells his business and its accompanying "good will" to another, "the law imposes upon the seller a specific duty to refrain from soliciting his former customers" *(Mohawk Maintenance Co. v Kessler,* 52 NY2d 276, 285-286). As the Court of Appeals has stated *(Von Bremen v MacMonnies,* 200 NY 41, 50-51, quoting *Trego v Hunt,* L.R. [App Cas 1896] 7): " '[a] man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of good will, that the vendor does not solicit the customer which he has parted with; it would be a fraud on the contract to do so' ". However, no such duty to refrain from solicitation is imposed upon a seller of a business "under compulsion" *(Von Bremen v MacMonnies, supra,* at 51). In this regard, the Court of Appeals has stated as follows *(Von Bremen v MacMonnies, supra,* at 51-52): "The necessity for the distinction which the law thus makes may readily be illustrated. If the sale of the good will upon the ordinary dissolution and liquidation of a partnership imported the same obligation as that which arises upon a voluntary sale, not to solicit trade from customers of the old firm, merchants who had been in trade as partners of undesirable associates would constantly find themselves, by the mere fact of the dissolution of the firm they desired to leave, disqualified from seeking future business from those who might be their most desirable customers. Such a restriction should be imposed and is im-

posed only when the transfer of the good will is a free affirmative act, and is made under such circumstances that it would be bad faith on the part of the vendor to avail himself as against the vendee of any special knowledge or advantage derived by him from the business whose good will he has voluntarily sold".

The sale of Greenberg's shares in the plaintiff corporation is, in our view, akin to a sale "under compulsion", since it was triggered by the allegedly oppressive conduct of Yesner, the 60% shareholder, and the resulting petition for dissolution pursuant to Business Corporation Law § 1104-a. Indeed, even the Supreme Court, Nassau County, recognized that the plaintiff's right of election was invoked, in response to Greenberg's petition for dissolution, in order "to compel" Greenberg to sell his 40% minority interest, and that a forced sale resulted (cf., *Matter of Gift Pax*, 123 Misc 2d 830, 837, *affd sub nom. Matter of Fleischer [Gift Pax]*, 107 AD2d 97). Accordingly, the plaintiff's first and fifth causes of action cannot stand. Nor can the plaintiff prevail in the third cause of action on the theory that the defendants have stolen trade secrets since the record indicates that the names of the plaintiff's clients are readily available from other sources (see, *American Executive Limousine Serv. v Nudo*, 122 AD2d 755).

The remaining causes of action in the complaint, which seek to recover damages for interference with contractual relationships and prospective economic advantage, must also be dismissed. The plaintiff failed to demonstrate the existence of any contracts that had been interfered with by the defendants, and also failed to submit evidentiary proof, in admissible form, that the defendant acted maliciously in an effort to interfere with the plaintiff's prospective economic advantage (*Sommer v Kaufman*, 59 AD2d 843; *Wegman v Dairylea Coop.*, 50 AD2d 108, *lv dismissed* 38 NY2d 710, 918).

Finally, the Supreme Court, Nassau County, should have granted that branch of the plaintiff's cross motion for summary judgment which was for dismissal of the defendants' counterclaim. In opposition to that branch of the plaintiff's cross motion, the defendants offered only conclusory allegations that the plaintiff instituted the instant action in bad faith for the purpose of harassing and intimidating the defendants. Suspicion, surmise, and accusation are not sufficient to defeat a motion for summary judgment (see, *Shapiro v Health Ins. Plan*, 7 NY2d 56). Mangano, J. P., Bracken, Eiber and Spatt, JJ., concur.