OPINION OF THE COURT
Gabrielli, J.
Defendants appeal by permission of the Appellate Division, First Department, from an order of that court which affirmed, with slight modification, an order of the Supreme Court, New York County, granting partial summary judgment to plaintiff and enjoining defendants indefinitely from soliciting the patronage of defendant Kessler’s former customers. The order appealed from rests upon the premise that defendants have a legal duty to refrain from acting to impair the “good will” which defendant Kessler had transferred to plaintiff in connection with the sale of his business and that this duty exists independent of any additional obligations undertaken by Kessler pursuant to certain express restrictive covenants contained in the contract of sale. We find this premise to be legally sound and, accordingly, hold that the order of the court below should be affirmed. In so holding, we necessarily conclude that the duration of defendants’ duty to refrain from soliciting certain of plaintiff’s customers is not in any way limited by the durational provisions contained in the express restrictive covenants or by the legal principle derived from our cases that express covenants restricting competition must be reasonable in scope.
The instant litigation arises out of the October 10, 1972 sale of defendant Kessler’s controlling shareholder’s interest in Mohawk Maintenance Co. to plaintiff’s predecessor for the sum of $2,000,000. Since its incorporation in 1952, Mohawk had been engaged in the business of providing building maintenance services in the tri-State area encompassing New York, New-Jersey and Connecticut and had developed an impressive list of customers largely through the efforts of defendant Kessler, the firm’s president and *280 principal shareholder. In connection with the sale of the business, Kessler agreed that he would not “either as owner, partner, officer, employee, agent, consultant manager, lessee or lessor or in any other capacity, directly or indirectly * * * carry on or engage * * * in any business competitive with any business carried on by [Mohawk]” for a period of five years after the closing date of the sale. The geographical scope of the restriction on Kessler’s business activities was confined to New York, Connecticut and any other State where Mohawk was actively doing business on the date of contract closing. Additionally, it was agreed between the parties that Kessler would continue to work for Mohawk as an employee for a period of three years and that the provisions of his employment contract would continue in force if he elected to remain with the company after his initial term of employment ended. The employment agreement also contained an anticompetition clause which precluded Kessler from engaging in any rival business “ [f] or a period of 24 months after the termination of this agreement”.
Kessler remained in Mohawk’s employ until August of 1978, when he voluntarily resigned his position. Shortly thereafter, he formed a new corporation, Sure-Way Maintenance Services, and began once again to engage in the business of providing building maintenance services. It is not seriously disputed that Kessler’s new business was competitive in certain respects with the business carried on by Mohawk. Indeed, the affidavits submitted to Special Term indicate that Kessler may have approached at least one of his former customers in an effort to lure its patronage away from Mohawk.
On January 23, 1979, Mohawk commenced the instant action seeking damages and a permanent injunction to prevent Kessler and Sure-Way from competing with it until August of 1980, the date that Mohawk claimed would mark the expiration of the anticompetition clause in defendant Kessler’s employment agreement.[1] Additionally, Mohawk *281 sought an order permanently restraining defendants from soliciting the patronage of Kessler’s former Mohawk customers.* [2]
Upon Mohawk’s motion for partial summary judgment, defendant Kessler took the position that any obligations he may have had to refrain from competing with Mohawk were terminated, at the latest, on October 9, 1977, 24 months after the original employment agreement expired. Thus, Kessler argued, .the decision by him in 1978 to enter into a competing enterprise could not have constituted a breach of the terms of the agreement. Special Term, however, rejected Kessler’s contentions, finding that the contractual limitations on his freedom to compete were intended to remain in effect for the 24-month period following the actual termination of his employment with Mohawk and not, as he contended, for the 24-month period following the expiration of his original three-year term. Since defendant Kessler had not actually left Mohawk’s employ until August of 1978, Special Term reasoned, he should be prevented from competing-with that firm until August of 1980. The lower court also issued an injunction permanently restraining defendants from soliciting the patronage of those customers who had been actively dealing with Mohawk in 1972, when the business was transferred to plaintiff’s predecessor. Noting that the 1972 sale of the business included an implicit transfer of tie firm’s existing “good will”, Special Term held that would be clearly inequitable” to permit defendants to impair that asset by luring such customers away from Mohawk’s present owners. Finally, after concluding that plaintiff was entitled to partial summary judgment, the court directed that a trial be held in order to assess plaintiff’s interim damages.
On defendants’ appeal to the Appellate Division, the determination of Special Term was affirmed with one minor *282 modification. While the Appellate Division basically indorsed the reasoning of the lower court, it found it necessary to amend the court’s order to make clear that the direction forbidding solicitation of the customers being serviced by Mohawk at the time the business was sold did not prevent defendants from accepting the patronage of those customers who voluntarily leave Mohawk and, without urging by defendants, request the services of Kessler’s new firm. The Appellate Division subsequently granted defendants leave to appeal to this court and certified the following decisive question of law: “Was the order of this Court, which modified the order of the Supreme Court, properly made?” Preliminarily, we note that, for purposes of the present appeal, defendants have abandoned their contention that the anticompetition clause in Kessler’s employment agreement was effective only until October 9, 1977. Anticipating that their appeal would not be considered or decided by the Court of Appeals until after August of 1980, defendants elected not to press their challenge to that part of the Appellate Division order which enjoin's them from competing with Mohawk until that date has passed, since, in their view, the matter is now academic.[3] Defendants have thus limited the issue in the present appeal to the narrow question of the propriety of the lower court’s direction that they refrain indefinitely from soliciting the patronage of those Mohawk customers who were being serviced by the firm at the time it was sold to plaintiff. Whi/le defendants do not seriously dispute that they had a legal duty to refrain from soliciting such customers for a reasonable period of time after the transfer of the business to plaintiff, they do argue vigorously that the enforcement of this duty for an indefinite period is contrary to law. This contention is based, in turn, upon what defendants perceive to be the “modern view” that express covenants restricting competition may be enforced only to the extent that they are reasonable in geographic scope and duration. Since the law looks with disfavor upon *283 agreements which purport to impose permanent limitations upon a party’s freedom to compete, according to defendants, it should similarly reject the notion that the legal duty to refrain from soliciting former customers is of indefinite duration.
We cannot embrace the proposition advanced by defendants, however, because, in our view, it fails to take into account the important distinction between the duty to refrain from soliciting former customers, which arises upon the sale of the “good will” of an established business, and separate duty to refrain from competing with the purchaser, which may only arise out of an express agreement such as that contained in defendant Kessler’s employment contract. When a business is sold, the purchaser acquires no legal right to expect that the seller will refrain from engaging in a competing enterprise. Indeed, the seller remains free to pursue his own economic interests without restraint unless the purchaser has managed to extract from him an express promise to refrain from competing (Von Bremen v MacMonnies, 200 NY 41, 47-48).
At one time in the early history of the common law, such promises were routinely held to be unenforceable, since they were deemed to be violative of the strong public policy in favor of encouraging free trade and discouraging monopolies (see Addyston Pipe & Steel Co v United States, 175 US 211; 14 Williston, Contracts [3d ed], §§ 1635-1636). Later, however, the inflexible approach of the judiciary to such agreements was relaxed to some extent as the courts came to realize that a blanket prohibition against agreements purporting to restrain trade was contrary to the equally strong public policy in favor of allowing individuals to dispose of their property freely and to enter into binding contracts (see Purchasing Assoc. v Weitz, 13 NY2d 267, 271; Leslie v Lorillard, 110 NY 519, 532-533) .[4] Ultimately, agreements restricting the parties’ right to compete were recognized by the courts and were held fully enforceable if the restrictions *284 were found to be “reasonable” in geographic scope and duration (see, e.g., Karpinski v Ingrasci, 28 NY2d 45; Wirth & Hamid Fair Booking v Wirth, 265 NY 214; see, generally, 6A Corbin, Contracts, § 1386). Indeed, the modern trend in the case law seems to be in favor of" according such covenants full effect when they are not unduly burdensome, particularly in cases where the agreement in question is made in connection with the sale of a business and its accompanying “good will” (see Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307; Purchasing Assoc. v Weitz, 13 NY2d 267, 271, supra; Hackenheimer v Kurtzmann, 235 NY 57; Diamond Match Co. v Roeber, 106 NY 473).[5] 6 Nevertheless, as defendants correctly point out, the requirement that such covenants be “reasonable” in scope has never been completely abandoned and remains an important part of our case law.
We see no sound reason, however, to extend the test of durational “reasonableness” to cases such as this which involve only the so-called “implied covenant” to refrain from soliciting former customers following the sale of the “good will” of a business. This “implied covenant” restricts the economic freedom of the seller only insofar as it precludes "him from approaching his former customers and attempting to regain their patronage after he has purported to transfer their “good will” to his purchaser. As such, the “implied covenant” imposes a much narrower duty than do express covenants purporting to restrict the seller’s right to compete in a particular geographical area or field of endeavor. Accordingly, this “implied covenant” might well be regarded as inherently “reasonable”, notwithstanding its indefinite duration (cf. Karpinski v Ingrasci, 28 NY2d 45, 50, supra [covenant restricting competition for an unlimited period of time may be enforced if it is sufficiently limited in geographic scope]).
More importantly, the right acquired by the purchaser of the “good will” of a business by virtue of this “implied *285 covenant” must logically be regarded as a permanent one that is not subject to divestiture upon the passage of a reasonable period of time. Indeed, it may be somewhat misleading to describe the duty of the seller to refrain from soliciting his former customers as one emanating from an “implied covenant”, since the duty is, in reality, one imposed by law in order to prevent the seller from taking back that which he has purported to sell. When the intangible asset of good will is sold along with the tangible assets of a business, the purchaser acquires the right to expect that the firm’s established customers will continue to patronize the business (see, generally, People ex rel. Johnson Co. v Roberts, 159 NY 70, 80-84; Churton v Douglas, Johns Eng Ch, p 174; Cruttwell v Lye, 17 Ves, Jr, 335, 346). The essence of the transaction is, in effect, an attempt to transfer the loyalties of the business’ customers from the seller, who cultivated and created them, to the new proprietor. Of course, the attempted transfer may not be entirely successful, in that some of the firm’s customers may choose to take their business elsewhere as a consequence of the change in ownership. Indeed, the occurrence of a certain amount of attrition is one of the risks that the purchaser must assume when he acquires an established business.[6]
It is quite another matter, however, when the seller actively interferes with the purchaser’s relationship with his newly acquired customers by capitalizing upon their personal loyalties to him in an effort to recapture their patronage. When the seller conducts himself in such a manner, he is, in effect, directly impairing the very asset which he has purported to transfer — the “good will” of his former business.
It is to prevent such an eventuality that the law imposes upon the seller a specific duty to refrain from soliciting his *286 former customers after he has sold his business and the accompanying “good will” to another. As we stated in the leading case in this jurisdiction, Von Bremen v MacMonnies (200 NY2d 41, 50-51, supra, quoting Trego v Hunt [L E (App Cas, 1896) 7]), “ ‘ [a] man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of good will, that the vendor does not solicit the custom which he has parted with; it would be a fraud on the contract to do so’ ”.
In light of the rationale underlying the rule prohibiting the seller from soliciting the patronage of his former customers, it would make little sense for us to hold that the prohibition should be lifted after a “reasonable” time has passed following the transfer. A purchaser who acquires the “good will” of a business pays good and valuable consideration for the seller’s implied promise to do everything within his power to transfer the loyalties of his customers to the new proprietor. At the very least, the purchaser obtains the exclusive right, as between himself and the seller, to exploit the established loyalties of the firm’s customers for the benefit of his newly acquired business. The expectation in the purchaser that arises as a result of the transaction is clearly a vested property right of indefinite duration (see 14 Williston, Contracts [3d ed], § 1640, at pp 118-119, n 6). It would make no more sense to hold that the seller may attempt to defeat this right by soliciting his former customers after the passage of a “reasonable” period of time than it would to hold that the seller of a business may re-enter and attempt to retake the premises and tangible assets of the firm after a “reasonable” time has expired.
In the present case, there can be little doubt that a transfer of “good will” was intended, even though the contract of sale did not expressly provide as much (cf. Merry v Hoopes, 111 NY 415; see, also, 25 NY Jur, Good Will, § 13). The circumstances surrounding the sale, particularly the size of the purchase price and the existence of express covenants barring competition by the seller, provide persuasive proof that defendant Kessler did indeed intend to part with *287 Mohawk’s “good will” along with its tangible assets when he sold the business to plaintiff’s predecessor. Inasmuch as defendants have failed to produce any concrete evidence to the contrary upon the present motion for summary judgment, the issue must be resolved against them.
Since there is no doubt that the “good will” of Mohawk passed to the purchaser when the business was sold, it follows from our holding that plaintiff is entitled to enjoy the use of this intangible asset indefinitely without interference by defendants. Although defendants may accept the patronage of those customers who were actively dealing with Mohawk on the date of the sale if such customers choose to leave Mohawk without prompting from defendants, the defendants remain under a positive and permanent duty to refrain from interfering with the rights acquired by plaintiff as a result of its acquisition of Mohawk’s “good will”. Accordingly, defendants were properly enjoined from soliciting the business of defendant Kessler’s former customers, and the fact that the injunction establishes a permanent restraint does not provide an adequate ground for challenging the order of the court below.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. By its terms, the anticompetition clause in the contract governing the sale of the business expired on October 9, 1977, five years after the date of the *281 closing. Mohawk did not seriously contend that defendants’ conduct, which began in the latter part of 1978, constituted a breach of that contractual provision.

. At the time the action was commenced, Mohawk sought and received a temporary restraining order. Thereafter, it successfully moved for a preliminary injunction to prevent defendants from taking further action pending final disposition of the litigation.

. Defendants have purported to “reserve their rights” to challenge this aspect of the lower court’s ruling if plaintiff chooses to pursue its claim for damages arising from their alleged breach of the restrictive covenant contained in the employment agreement. We express no view as to the effectiveness of this attempted “reservation of rights”.

, The change in judicial attitudes toward such agreements was also occasioned by a growth in trade and a concomitant expansion in the range of available economic opportunities (see Wood v Whitehead Bros., 165 NY 545, 550-551).

. Defendants have suggested in their briefs that express covenants restricting competition are scrutinized more carefully by modern courts than they were in the distant past. This suggestion, however, is simply not supported by the case law.

. The purchaser of a business may protect himself at least against the possibility that some of his customers will voluntarily follow the seller by negotiating a reasonable express covenant restricting the seller’s freedom to engage in a competing business (see, e.g., Sander v Hoffman, 64 NY 248). Absent such a covenant, however, there are no rules of law which would prevent the seller from accepting the trade of his former customers, provided that he does not actively solicit such trade (Von Bremen v MacMonnies, 200 NY 41, 47-49, supra).