KRAFT AGENCY, INC., et al., Respondents-Appellants, v JOSEPH DELMONICO, Appellant-Respondent.

Fourth Department, September 27, 1985

**APPEARANCES OF COUNSEL**

*Sugarman, Wallace, Manheim & Schoenwald* (*Samuel M. Vulcano* of counsel), for appellant-respondent.

*Grass, Balanoff, Costa & Whitelaw, P. C.* (*Mary C. Lannon* and *Kenneth Whitelaw* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

HANCOCK, JR., J. P.

Plaintiffs, Bernard F. Kraft (Kraft), an insurance agent, and Kraft Agency, Inc. (the corporation), through which Kraft operates his agency, entered into a contract with defendant dated January 18, 1980, entitled "Employment Contract Buy & Sell Agreement". The contract is in two parts: the "employment contract" pertaining to defendant's employment by the corporation, and the "buy and sell agreement" containing various provisions pertaining to the ownership and control of the agency's insurance accounts and to their transfer from Kraft to defendant. Included in the contract is the following restrictive covenant: "In the event of either party purchasing from the other incidents of ownership under any of the provisions stated in this contract, the seller agrees to a 'covenant not to compete'. He will not in any way take under his control or ownership, any insurance accounts the subject of this contract nor in any way, assist others to do so. Furthermore, he will not enter into the insurance agency business in any way shape or manner, within 50 miles of Liverpool, N.Y., within a five (5) year period of his sale of ownership."

In September of 1983, during the fourth operative year of the contract, defendant left the employ of the corporation, set up a competing insurance business, and allegedly took over insurance accounts belonging to the agency. In plaintiffs' action to enjoin defendant from competing pursuant to the restrictive covenant and for damages, Special Term granted plaintiffs' motion for summary judgment in part by ordering that defendant be enjoined "from controlling or owning any insurance accounts" of the agency as of September 1983[1] for a period of five years from that date, upon condition that Kraft tender the amount due under the contract for the purchase of defendant's ownership rights. The question of what, if any, damages plaintiffs may have suffered from defendant's alleged wrongful takeover of the agency's insurance accounts is referred to trial term, and the balance of plaintiffs' complaint — seeking enforcement of the covenant restricting defendant from competing within 50 miles of Liverpool, New York, for a period of five years — is dismissed. Plaintiffs as well as defendant have appealed.

There are two issues: (1) whether the restrictive covenant is, as a matter of law, wholly unenforceable as defendant asserts;

---

1. Although the order refers to accounts "held by plaintiff", it is evident from Special Term's decision that the intent of the order is to restrain defendant from "controlling or owning" any of the insurance accounts of the Kraft Agency, i.e., accounts constituting the "total Agency book of business".

and (2) if not, to what extent, if any, the covenant may be enforced on a motion for summary judgment without a hearing as to its reasonableness.

For reasons hereinafter stated, we reject defendant's principal argument that the covenant is not, in any part, legally enforceable. We hold, however, that the injunction preventing defendant from "controlling or owning" any of the agency's insurance accounts for a period of five years from September 1983 goes beyond what may properly be directed on this record without a hearing. The order should, therefore, be limited as hereinafter set forth. Moreover, Special Term erred in summarily dismissing the balance of plaintiffs' complaint. Accordingly, there should be a modification.

## I

The stated purposes of the "Employment Contract Buy & Sell Agreement" are twofold: (1) to fulfill defendant's desire for employment and Kraft's desire for assistance in serving existing accounts and in developing new business; and (2) to provide defendant with an opportunity to acquire ownership of an insurance business and Kraft with a long-range plan for the sale and disposition of his agency.[2] The contract has two discrete parts. Under the employment provisions, defendant agrees to become a full-time employee of the corporation for a compensation based on 40% of the gross commissions in existing accounts assigned to him for servicing and on all new accounts which he produces. Defendant is guaranteed minimum salaries in increasing amounts for the first three years and plaintiffs agree to provide him with the necessary office and administrative facilities and assistance for the conduct of his business and to include him in fringe benefit programs.

Under the "buy and sell agreement", which applies only to Kraft and defendant and not to the corporation, defendant becomes the owner of 1% of the total Agency book of business" at the end of the first contract year, of an additional 2% at the end of the second and third years, of 3% at the end of the fourth, and of an additional 4% at the end of each subsequent year until the

---

**2.** The contract includes the following recitals:

"Whereas [Delmonico] seeks employment in the Insurance Agency business and furthermore desires opportunity to acquire ownership of such a business, and

"Whereas [Kraft] * * * seeks additional personnel to assist him in the service of existing insurance accounts and the sale and development of additional accounts, and furthermore desires a long range plan for the sale and disposition of his ownership rights of said insurance business".

twelfth, when his total ownership becomes 40%.[3] Once the transfer of ownership has begun, neither party may sell his ownership interest to a third party, and in the event of the death of either party the survivor agrees to buy, and the estate of the deceased party must sell, the ownership rights held by the deceased party. Between the tenth operative year of the contract and the twelfth, plaintiff Kraft must offer to defendant the option to purchase, on specified terms, Kraft's remaining share of ownership in the insurance accounts. In the event that defendant does not exercise the purchase option or that the contract is terminated either by Kraft or by defendant, Kraft must repurchase defendant's share of the business as provided in the contract. For purposes of any transfer of ownership rights in the book of business, it is agreed that the value is equal to 2¼ times the annual gross commission income for the fiscal year ending on October 31 immediately prior to the transfer.

Defendant's contention that the restrictive covenant is totally unenforceable is premised on his interpretation of the covenant as being ancillary to the employment provisions in the contract. Such a covenant, defendant argues, citing *Reed, Roberts Assoc. v Strauman* (40 NY2d 303) and *ABC Mobile Brakes v Leyland* (84 AD2d 914), must be reasonable in scope, time and extent and will only be enforced to the extent necessary to protect trade secrets, confidential customer lists, or where the employee has provided unique services. Because the record contains no showing of the reasonableness of the restrictive covenant or that it is necessary to protect plaintiffs' interests, Special Term should have dismissed the complaint in its entirety, defendant asserts.

Plaintiffs maintain, on the other hand, that the restrictive covenant is ancillary to the parties' agreement to transfer good will in the insurance agency, and that the determination of its enforceability should be made on the basis of the rules in *Mohawk Maintenance Co. v Kessler* (52 NY2d 276) and *Purchasing Assoc. v Weitz* (13 NY2d 267, 271-272) which govern restrictions where good will in a business is sold. Under *Mohawk Maintenance,* plaintiffs say, defendant may be prevented from actively soliciting the insurance accounts belonging to the Kraft Agency without a showing of reasonableness, and they argue further that the covenant prohibiting defendant from competing within a 50-mile radius for a period of five years may be enforced if shown to be reasonable under *Purchasing Assoc.*

---

**3.** Defendant's "ownership rights" in the "total Agency book of business" entitle him to receive "his appropriate percentage share of any amounts paid to [Kraft] or other employees as a compensation related to their ownership interest of insurance accounts".

From the foregoing, it is evident that a resolution of the opposing contentions of the parties must turn first on an analysis of the agreement to determine: (1) whether the restrictive covenant is ancillary to the transfer of ownership rights in the book of business of the agency or to the employment provisions of the contract; and (2) whether, if the covenant is ancillary to the transfer of ownership, it involves a transfer of ownership in the agency's good will as the term is used in *Mohawk Maintenance Co. v Kessler* (*supra,* at p 284) and *Purchasing Assoc. v Weitz* (*supra,* at pp 271-272).[4]

## II

Before discussing the terms of the contract, it may be helpful to summarize briefly the applicable rules. They are now well settled. When the good will of a business is sold, irrespective of any term in the contract, the seller is prevented by an "implied covenant" from depreciating the value of the good will by approaching his former customers and attempting to regain their patronage. The good will of a business, an intangible asset which may be transferred from the seller to the purchaser, has been defined as the right of the purchaser "to expect that the firm's established customers will continue to patronize the business" (*Mohawk Maintenance Co. v Kessler, supra,* at p 285; *see also,* Story, Partnership § 99, at 170). The limited duty to refrain from soliciting former customers is in reality "one imposed by law in order to prevent the seller from taking back that which he has purported to sell" (*Mohawk Maintenance Co. v Kessler, supra,* at p 285). It is not subject to a test of "reasonableness" and is indefinite in duration (*see, Alexander & Alexander Servs. v Maloff,* 105 AD2d 1066, 1067, 1068).

Where, however, the purchaser of the good will of a business seeks to impose on the seller a restriction contained in an express covenant in the sale contract which goes beyond the narrow duty imposed by law on a seller not to solicit former customers, the test of reasonableness applies. Such a covenant

---

**4.** Although Special Term found that the "restrictive covenant in this case was not agreed upon ancillary to the sale of a business and accompanying good will", it, nevertheless, held that *Mohawk Maintenance Co. v Kessler* (52 NY2d 276) should apply and on the rationale of that case enjoined defendant from owning or controlling the agency's insurance accounts. The balance of the clause (prohibiting competition within 50 miles from Liverpool, New York, for a five-year period) Special Term specifically found to be ancillary only to the employment provisions of the contract and, because of plaintiffs' failure to meet the stringent requirements for the enforcement of such covenants, it dismissed the balance of plaintiffs' complaint. For reasons set forth in part III, *infra,* we do not accept Special Term's analysis.

will be imposed only if it is "not more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought" (*Purchasing Assoc. v Weitz,* 13 NY2d 267, 271-272, *supra; Alexander & Alexander Servs. v Maloff, supra,* at p 1068).

To be contrasted is a covenant in a contract of employment which restricts the employee's right to compete with his former employer. For reasons of public policy, such a restriction generally meets with disfavor in the courts and will normally not be enforced against a former employee, "unless necessary to protect the trade secrets, customer lists or good will of the employer's business, or perhaps when the employer is exposed to special harm because of the unique nature of the employee's services" (*American Broadcasting Cos. v Wolf,* 52 NY2d 394, 403; *see, Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 307-308, *supra; Purchasing Assoc. v Weitz, supra,* at pp 272-273; *Alexander & Alexander Servs. v Maloff, supra,* at p 1068; 6A Corbin, Contracts § 1394). Moreover, it will not be enforced "if it is unreasonable in time, space or scope or would operate in a harsh or oppressive manner" (*American Broadcasting Cos. v Wolf, supra,* at p 404).

### III

In examining the contract here, we have no difficulty in concluding that the "covenant not to compete" is ancillary to the "buy and sell agreement" and not to the "employment contract". It is binding only on Kraft and defendant — the sole parties to the transfer provisions — and not on the corporation, defendant's employer. By its express terms, the very occurrence which makes it operative to bind the seller is "the event of *either party purchasing from the other* incidents of ownership under any of the provisions stated in this contract" (emphasis added). On the other hand, the covenant makes no reference to the employment provisions or to Kraft Agency, Inc., defendant's corporate employer. Moreover, defendant's contention that the covenant should be viewed as one that is being used to prevent a former employee from engaging in his usual business activities is belied by the fact that it applies to restrict the activities of Kraft, the principal of the employer, as well as of defendant, the employee.

From a reading of the entire "buy and sell agreement", it is evident that what the parties have agreed to transfer — "the total Agency book of business" or the aggregate of the insurance accounts of the agency's customers — and what they have agreed to protect from competition is good will, i.e., the expectancy "that the firm's established customers will continue to

patronize the business" (*Mohawk Maintenance Co. v Kessler,* 52 NY2d 276, 285, *supra*). That the asset to be transferred fits precisely the accepted definition of good will is borne out by the formula the parties have chosen for arriving at its value for purposes of a sale: "two and one quarter (2¼) times the annual gross commission income for the fiscal year ending on the October 31st immediately prior to the transfer of ownership". The formula is based on essential components of good will: the number of customers at the time of the sale, and the prediction (reflected in the agreed upon multiplier of 2¼) that these customers will remain as such in the future.

We conclude, then, that the "covenant not to compete" is ancillary to the terms of the contract pertaining to the transfer of Kraft's and defendant's ownership rights in the agency's book of business and not to those pertaining to defendant's employment by the corporate plaintiff, Kraft Agency, Inc. Further, what Kraft and defendant have agreed to transfer to one another is good will in the agency's insurance business.

### IV

Notwithstanding that the restrictive covenant may be ancillary to the sale of good will, defendant maintains that it should not be enforced under the less rigorous rules applying to sales of businesses set out in *Mohawk Maintenance* and *Purchasing Assoc.* (*supra*). He advances two reasons: (1) that the transfer of ownership rights contemplated by the contract does not have the attributes of a business sale as the term is usually understood because it does not include stock in Kraft Agency, Inc. (which is solely owned by Kraft), control of management of the agency, or assets other than the agency's "book of business" and, therefore, the cases involving business sales should not apply; and (2) that the share of the book of business which is to be transferred to Kraft — 5% — is too small to be of significance. Neither reason is convincing.

Whether defendant is transferring stock, or control over the management of the business, or other assets besides good will, is, we conclude, of no consequence. For it is solely to protect the interest in the good will of a business acquired by a purchaser that the law imposes a duty on the seller not to solicit former customers. The duty is founded on the fundamental principle that: " '[a] man may not derogate from his own grant' " (*Von Bremen v MacMonnies,* 200 NY 41, 50-51, quoting *Trego v Hunt,* LR App Cases [1896] 7). Thus, the "vendor is not at liberty to destroy or depreciate the thing which he has sold", and there is "an implied covenant, on the sale of good will, that the vendor

does not solicit the custom which he has parted with; it would be a fraud on the contract to do so" (*Von Bremen v MacMonnies, supra,* at p 51). Similarly, it is the recognition of the legitimate interests of a purchaser of good will in preventing the seller "from recapturing and utilizing, by his competition, the good will of the very business which he transferred for value" (*Purchasing Assoc. v Weitz, supra,* at p 271) which has prompted courts to uphold anticompetitive covenants when they are not more extensive than reasonably necessary for protection of the buyer's interest in the asset purchased. That a contract may or may not call for the transfer of control or of assets in addition to good will is beside the point; the purchaser's need for protection in a "covenant not to compete" relates solely to the single asset which the seller can diminish or destroy by solicitation or competition — the good will.

Nor do we see any reason why the legal duty not to solicit former customers should attach any the less to defendant here because his share of the total book of business being sold is relatively small. Irrespective of the percentage being transferred, the same underlying rationale applies — that a " 'man may not derogate from his own grant' " (*Von Bremen v MacMonnies, supra,* at pp 50-51). Here, as it happens, the share of the agency's total book of business being sold is 5% (valued, as Special Term has noted, at $16,230) because defendant has chosen to terminate the contract in its fourth year. However, it is readily seen that after 12 years of operation under the contract, Kraft could be purchasing 40% instead of 5% of the book of business, or defendant could be purchasing Kraft's remaining 60%. We note that courts have shown no reluctance to enforce anticompetitive covenants ancillary to the sale of good will where the sale involves a partial interest (*see, Hackenheimer v Kurtzmann,* 235 NY 57; *Goldstein v Maisel,* 271 App Div 971). In any event, what the purchaser needs to protect from injurious competition by the seller is the total book of business of which he becomes the sole owner — not merely that part which he has acquired from the seller.

As Special Term properly held, Kraft's interest for which he seeks protection, despite defendant's efforts to belittle it, is not insignificant, and defendant has presented no valid reason why the rationale for imposing anticompetitive restrictions in business sales as explained in *Mohawk Maintenance* (52 NY2d 276, *supra*) and *Purchasing Assoc.* (13 NY2d 267, *supra*) should not apply. We conclude, then, that plaintiffs are entitled to injunctive relief under the rules set forth in those cases.

## V

The final question concerns the extent to which the "covenant not to compete" may be enforced on this record without a hearing. From the foregoing, it is evident that, even without the restrictive covenant, plaintiffs would be entitled under *Mohawk Maintenance (supra)* to an injunction of indefinite duration which would prohibit defendant from actively soliciting the customers of the agency. Such a duty is imposed by law upon the seller of good will and the "reasonableness" standard does not apply. Defendant properly points out, however, that the portion of the "covenant not to compete" which Special Term has enforced — restraining defendant "from controlling or owning any insurance accounts held by plaintiff as of September 1983" — is more restrictive than *Mohawk Maintenance* permits, since it prohibits defendant from accepting business from customers who, although not solicited, choose to take their business from the Kraft Agency to defendant's new agency. The agreed-upon restriction against taking "control or ownership" of accounts of the agency, whether or not solicited, may be reasonable and necessary as a means of increasing the probability that the good will purchased (particularly that relating to former customers of the seller) does not remain with or slip back to the seller. Whether such a restriction is reasonable, however, cannot be ascertained from this record and must be determined at trial (*see, Purchasing Assoc. v Weitz,* 13 NY2d 267, 271-272, *supra*).

By the same token, the court must, after hearing the proofs, make a "reasonableness" determination with respect to the balance of the restrictive covenant: the prohibition against competing within a 50-mile radius of Liverpool, New York, for a period of five years. In determining whether the terms of such a restraint are reasonably necessary to protect Kraft's interests, the trial court should consider, among other things, such factors as the size and location of the market areas to be served by the parties and the length of time needed to provide Kraft with a reasonable period in which to secure his ownership in the good will of the agency (*see, Karpinski v Ingrasci,* 28 NY2d 45, 49-50; Ann., 46 ALR2d 119, 215; Restatement [Second] of Contracts § 188, comment f, at 44).

Accordingly, that portion of Special Term's order enforcing the restrictive covenant should be modified to the extent that defendant should only be restrained from soliciting the customers of the Kraft Agency for a period of five years from September 1983[5] (*see, Karpinski v Ingrasci, supra,* at pp 51-52). Further,

---

**5.** Although the rule stated in *Mohawk Maintenance Co. v Kessler* (52 NY2d 276, 286) permits an injunction against solicitation for an indefinite period, plaintiffs requested relief for only a five-year period.

the complaint should be reinstated and a determination made at trial as to the reasonableness of the other restrictions contained in the covenant. Any questions pertaining to violations of the covenant or damages that may have resulted should, likewise, be referred to trial.

CALLAHAN, DENMAN, O'DONNELL and SCHNEPP, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by Hancock, Jr., J. P.