**NATIONAL ELEVATOR CAB & DOOR CORP., Plaintiff–Appellee,**

v.

**H&B, INC., and Jeremy Berman, Defendants–Appellants.**

No. 08–0808–cv.

United States Court of Appeals, Second Circuit.

June 27, 2008.

Scott H. Wyner (Richard Raysman, on the brief), Thelen Reid Brown Raysman & Steiner LLP, New York, NY, for Appellants.

Richard H. Epstein (Mitchell D. Haddad, on the brief), Sills Summis & Gross P.C., New York, NY. for Appellee.

PRESENT: ROGER J. MINER, JOSÉ A. CABRANES, Circuit Judges, RICHARD M. BERMAN, District Judge.*

## SUMMARY ORDER

Defendant-appellant H&B Elevators ("H&B") appeals from a January 24, 2008 memorandum and order of the United States District Court for the Eastern District of New York (Robert M. Levy, *Magistrate Judge*) denying reconsideration of the Magistrate Judge's order of July 20, 2007, which granted a motion for a preliminary injunction brought by plaintiff-appellee National Elevator Cab & Door Corp. ("National").[1] We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We review the grant of a preliminary injunction for abuse of discretion. *Lusk v. Vill. of Cold Spring,* 475 F.3d 480, 484 (2d Cir.2007). "We will find such an abuse of discretion if the district court applies legal

---

* The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

1. Pursuant to 28 U.S.C. § 636(c), the parties consented "to have this case referred to a Magistrate Judge for purposes of ruling on plaintiff's preliminary injunction motion." *See Nat'l Elevator Cab & Door Corp.,* 2008 WL 207843, at *1.

standards incorrectly[,] ... relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 500 F.3d 111, 119 (2d Cir.2007) (internal quotation marks omitted).

A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor.

*Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir.2008).

■ The Magistrate Judge, based on evidence presented at the preliminary injunction hearing, found that H&B's solicitation of National's clients "would likely harm National's good will because it would affect National's general reputation in the market." *Nat'l Elevator Cab & Door Corp. v. H & B, Inc.,* 07–1562, 2008 WL 207843, at *6 (E.D.N.Y. Jan. 24, 2008). On this basis, he concluded that National had shown it would suffer irreparable harm if H&B was not enjoined from violating the non-competition clause contained in its agreement with National (the "Agreement"). *Cf. Tom Doherty Assoc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37–38 (2d Cir.1995) (noting that "a loss of prospective goodwill can constitute irreparable harm"). The Magistrate Judge further observed that the Agreement itself stipulated (1) that "money damages would not be a sufficient remedy for any breach" by H&B and (2) that, in the event of any such breach, National would be entitled to an injunction or other equitable relief. *Nat'l Elevator Cab & Door Corp.,* 2008 WL 207843, at *6. Noting that H&B—a sophis-

ticated business entity—had signed the Agreement after consulting with counsel, the Magistrate Judge concluded H&B's endorsement of the Agreement constituted an additional factor weighing in favor of the conclusion that National had made the required showing of irreparable harm. *Cf. Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir.1999) (observing that an employee's adoption of a contract provision "conced[ing] that in the event of [the employee's] breach of the post-employment competition provision, [the company] shall be entitled to injunctive relief, because it would cause irreparable injury ... might arguably be viewed as an admission by [the employee] that [the company] will suffer irreparable harm were he to breach the contract's non-compete provision").

■ Regarding the likelihood that National would suffer irreparable harm if H&B was not enjoined from confidential information belonging to National—to which H&B gained access only by signing the Agreement—the Magistrate Judge noted that the Agreement provided H&B with

access to information about National that it would not otherwise have—including National's entrance design, marketing plan, outsourcing and pricing information—which showed H&B how it could be profitable ... in the New York market. Although it expressly agreed to all of the terms of the Agreement, H&B reneged, proceeded to engage in a campaign of aggressive and underhanded tactics, and immediately lured away National's largest customer as well as its [elevator] entrance installer, who abandoned National on one day's notice. With that backdrop, one can easily conclude that H&B can and will cause irreparable, unquantifiable harm to National's customer relations and reputation in the industry if it is not enjoined.

*Nat'l Elevator Cab & Door Corp.,* 2008 WL 207843, at *8 (footnotes omitted).

With regard to National's likelihood of success on the merits, the Magistrate Judge—relying on *Abdul Wali v. Coughlin,* 754 F.2d 1015 (2d Cir.1985)—determined that, to establish a likelihood of success on the merits of its litigation, National need only show that its probability of prevailing was "better than 50 percent." *See, e.g., Abdul Wali,* 754 F.2d at 1025 (noting that, "to establish that . . . he is likely to prevail on the merits of the underlying controversy," an applicant for injunctive relief "need only make a showing that the probability of his prevailing is better than fifty percent"); *Mohammed v. Reno,* 309 F.3d 95, 102 (2d Cir.2002) (defining " 'less than a likelihood of success' to mean something less than 50 percent" and "more likely than not" to mean a "likelihood . . . [of] more than 50 percent").

■ The Magistrate Judge then correctly noted that, under New York law, the test for enforceability of a non-competition agreement between two businesses is "reasonableness." *See, e.g., Mohawk Maintenance Co. v. Kessler,* 52 N.Y.2d 276, 437 N.Y.S.2d 646, 419 N.E.2d 324, 328 (1981) ("[A]greements restricting the parties' right to compete [have been] recognized by the courts and . . . held fully enforceable if the restrictions . . . [are] 'reasonable' in geographic scope and duration[,] . . . particularly in cases where the agreement in question is made in connection with the sale of a business and its accompanying 'good will' "); *accord Cliff v. R.R.S. Inc.,* 207 A.D.2d 17, 19, 620 N.Y.S.2d 190 (N.Y.App. Div.3d Dep't 1994) (noting that "a contract for the sale of a business may contain an express covenant not to compete" and that such provisions will usually "be enforced if reasonable in geographic scope and duration" (citations omitted)). Looking to the substance of the non-com-petition clause, the Magistrate Judge observed that it (1) covered only "the high-rise residential market" of metropolitan New York; (2) applied only to "three customers one of which . . . [was off-limits] as to both cabs and entrance installation and [two of which were off-limits] as to entrance installation" only; (3) was only operational for five years in the first instance; and (4) could easily be "tailor[ed]" as necessary by the District Court. *See* Special App. 5. On this basis, the Magistrate Judge concluded that the restrictions imposed by the non-competition provision were reasonable in geographic scope and duration and, therefore, likely to be enforceable as a matter of law. *Cf. Town Line Repairs, Inc. v. Anderson,* 90 A.D.2d 517, 518, 455 N.Y.S.2d 28 (N.Y.App. Div.2d Dep't 1982) (holding that "[a] covenant will not be declared invalid merely because it is unlimited in duration if the other restrictions on geographic area and scope are limited and reasonable"); *Mohawk Maintenance Co.,* 437 N.Y.S.2d 646, 419 N.E.2d at 326 (finding reasonable a non-competition clause prohibiting competition "for a period of five years . . . [in] New York, Connecticut and any other State where [the protected party] was actively doing business on the date of contract closing").

■ Finally, the Magistrate Judge concluded that "National ha[d] a reasonable likelihood of success in proving that the Agreement's trade-secret and confidentiality provisions are enforceable." *Nat'l Elevator Cab & Door Corp.,* 2008 WL 207843, at *11. The Magistrate Judge found that National had made a threshold showing that "at least some of the information National disclosed to H&B during their acquisition discussions constituted trade secrets"—that is, "was not publicly available, was carefully guarded by National, was valuable to National's competitors, and would not have been available to H&B

were it not disclosed pursuant to a confidentiality agreement" *Id.* at \*12 & n. 28. He further determined that the record contained enough evidence for a fact-finder to infer that H&B had misused this confidential information to National's detriment. *Id.* at \*13. This evidence included the following facts: (1) after H&B returned to National a DVD describing National's SecureSlide elevator entrances, H&B attempted to obtain a copy of the DVD from another source, indicating that the DVD "contained information that H&B deemed valuable and that was not publicly available at the time," *id.* at \*12; and (2) following its receipt of the DVD, H&B entered into a contract to install elevator entrances from the floor—the very technique covered by National's SecureSlide patent, *id.* In sum, the Magistrate Judge found that "almost immediately after receiving confidential materials from National and meeting with National's representatives, H&B, which had not made a profit on entrances for many years and had little presence in the New York City market, began offering [entrance] installation,

changed its [entrance] design, and suddenly had the ability to attract Fujitec as a customer." *Id.*

Review of the record reveals no error in the Magistrate Judge's understanding of the applicable law or the Magistrate Judge's application of that law.[2] Accordingly, we decline to disturb the Magistrate Judge's finding that National had established the need for the requested preliminary injunction.

Having considered all of defendants-appellants' arguments on appeal and found them to be unavailing, we AFFIRM the order of the District Court and REMAND to the District Court for further proceedings.

The mandate shall issue forthwith.

**2.** H&B claims that, in arriving at the above findings, the Magistrate Judge ignored record evidence indicating that Fujitec had stopped dealing with National because of Fujitec's dissatisfaction with the quality of services National was providing. As the record reveals, the Magistrate Judge addressed the evidence to which H&B adverts but discounted its value based on the finding that the witnesses in question had not testified credibly while National's Chief Executive Officer, Harold Friedman, had provided testimony that was both "credible and convincing." *See, e.g., Nat'l Elevator Cab & Door Corp.,* 2008 WL 207843, at \*8 n. 19 (describing Friedman's testimony and the Magistrate Judge's decision to credit it); *id.* at \*12 (finding the testimony of H&B's Chief Operating Officer "unpersuasive, since her memory of the events at issue was selective at best[,] ... her responses were often evasive or imprecise, [and] her testimony is belied by [certain] evidence" in the record); Hearing Tr. 75 (observing that Fujitec did not appear to be "a disinterested party" and it

was "unclear as to whether [the Fujitec witnesses testifying for H&B] colored their testimony or not").

In light of the great deference we accord to credibility determinations made by a finder of fact, H&B's challenge to the Magistrate Judge's properly substantiated discounting of its evidence is unavailing. *Cf. United States v. Isiofia,* 370 F.3d 226, 232 (2d Cir.2004) (noting that "where ... findings [of fact] are based on credibility determinations, even greater deference [than usual] is required, 'for only the [court hearing the evidence] can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.' ") (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)); *see also Cifra v. G.E. Co.,* 252 F.3d 205, 213 (2d Cir.2001) (noting that "decisions as to whose testimony to credit and which ... permissible inferences to draw are solely within the province of the trier of fact").