SARA GOLDBERG, Doing Business as AMERICAN DYE WORKS, Respondent, *v.* SAMUEL GOLDBERG, Defendant, Impleaded with GABRIEL SAPERSTEIN and Another, Appellants.

Second Department, May 11, 1923.

**Unfair competition — action to restrain former employees from soliciting plaintiff's customers — contract with union to which employees belonged prohibited soliciting for six months if employees left without cause — defendants cannot be restrained on ground of unfair competition nor under six months' clause which has expired.**

The defendants, who were former employees of the plaintiff and who left her employment without cause, cannot be restrained on the ground of unfair competition from soliciting trade from the customers of the plaintiff since there was no proof of fraud nor any express provision in their contract of employment not to go in business or to solicit former customers of their employer; nor can they be restrained from so doing on the ground that a contract between the plaintiff and the defendant's union provided that in case employees left their employment without good cause, they should not solicit business for a period of six months thereafter, since that period of time has already elapsed.

APPEAL by the defendants, Gabriel Saperstein and another, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 16th day of October, 1922, upon the decision of the court, rendered after a trial at the Kings Special Term, adjudging that the plaintiffs have a permanent injunction against the appellants.

*Aaron William Levy* [*Leonard Klein* with him on the brief], for the appellants.

*K. Karl Klein,* for the respondent.

KELBY, J.:

This action was brought for an injunction. The prayer for relief asks: " That the defendants and each of them be enjoined and restrained for a period of six months from the 6th day of March, 1922, from continuing in the dyeing and cleaning business on their own account, or in association with each other, or in association with, or the employ of any person." The judgment entered gave the plaintiff more than she asked for, because the final judgment provides that the appealing defendants be forever enjoined " from continuing in the dyeing and cleaning business on their own account, * * * and from interfering with the custom and good will of the plaintiff's business * * * by soliciting, collecting from, or delivering to customers of the plaintiff, any clothes for the purpose of dyeing and cleaning."

The plaintiff, Sara Goldberg, was doing business, and had for some years prior to the trial done business, under the trade name of " American Dye Works." She maintained a factory for cleaning and dyeing clothes on New Utrecht avenue, Brooklyn; the business was built up by soliciting work from the proprietors of ladies' and men's tailoring shops.

For several years past the plaintiff followed the prevailing mode of collective bargaining with her help. The plaintiff made direct contracts with the Cleaners' and Dyers' Union, to which union the defendants Saperstein and Lieberman belonged. Contracts were renewed from time to time, and a contract running from April 1, 1921, to April 1, 1922, was in existence at the time when differences arose between plaintiff and defendants.

The defendants Saperstein and Lieberman had been in the employ of the plaintiff for the past five years. The complaint alleges: " That on or about the first day of April, 1921, the plaintiff and the defendants through their union the ' Cleaners and Dyers Union,' entered into an agreement, a copy of which is hereto annexed and hereby made part of the complaint, * * *. That the said defendants promised and agreed to and with the plaintiff to be bound by the terms of this agreement entered into with the union to which they belong, and of which they were members, and which union they authorized to enter into this agreement of employment with the said plaintiff."

The answers of both of said defendants admit the allegations concerning the contract, by not denying them. Upon the trial the contracts were expressly admitted as being the contracts of both the plaintiff and the appealing defendants. The learned trial justice decided the case solely on the ground " that this is a case of unfair competition on the part of employees who, without regard to the rights of the employer, left her employ and made use of the knowledge which they had acquired in the business of their employer, for the purposes of their own business, and not because there was a breach of any contract supposed to have been made between the employer and the union, which I do not regard as having any relation whatever to the case." On the facts found judgment was granted in accordance with the prayer for " other relief " than that which is specifically asked for by the plaintiff, and a permanent injunction was granted against the defendants.

The said defendants were drivers whose business it was to deliver goods and to solicit trade. The contract of employment provides in part as follows: That no employee shall be discharged without good cause after employment of one week and that all employees shall give two days' notice to their employers of their intentions

to leave, which notice may be waived by the employers. The pertinent part of the agreement is paragraph 26, which reads as follows:

" In case the firm [employer] should discharge any driver who is a member of the union, such driver shall be at liberty to solicit the trade of the same list of customers which he solicited while employed by the firm or any other firm which may employ him; *but in the event that a driver leaves his employment without good cause* he shall not be permitted to solicit the same list of customers for any other firm *for a period of six months* following the leaving of his employment without good cause."

The complaint was evidently drawn on the theory that this contract governed the rights of the parties, because the pleader alleges that each of the defendants without cause left the plaintiff's employment on March 6, 1922; that they then engaged in the same line of business with a firm known as the Feldman Dye Works, and that said defendants and each of them are soliciting, collecting from and delivering clothes in violation of the agreement hereinbefore referred to, and still are diverting the patronage of the customers of the plaintiff, thereby destroying the good will. In her prayer for relief, again recognizing the provision of the contract above set out, the plaintiff asks that the defendants be restrained only for a period of *six months* from the 6th of March, 1922, from continuing in the cleaning business on their own account. This date, March sixth, it will be remembered, is the date on which the defendants are alleged to have left the employment of the plaintiff without cause.

On the opening of the case counsel again disclosed the theory of the action, specifically calling attention to the provision of the contract above quoted; and apparently the main facts were admitted — the employment, the date when the employment ceased, and the fact that the defendants solicited, after leaving the plaintiff's employment, business from the plaintiff's customers on the same routes that they used to serve. The issue to which counsel tried to limit the case, was whether or not the defendants were discharged by the plaintiff, or whether the defendants themselves voluntarily left plaintiff's employment, the theory of counsel being that if the court found that defendants had been discharged by the plaintiff they would have the right immediately to solicit trade from the people with whom they had been dealing, whereas if the defendants left of their own accord they would then be prevented, by the terms of the contract, from soliciting any business from the same customers until a period of six months had elapsed.

The evidence sustains the finding made by the trial judge that

the appealing defendants left plaintiff's employment without notice, and that on March 6, 1922, after coming into plaintiff's office, at separate hours, each of them stated to the plaintiff's husband that he was " through."

There can be no doubt that the said defendants, immediately on leaving the employment, entered into an arrangement between themselves and another Goldberg, Samuel by name, who appears to be a brother of plaintiff's husband. The new combination — Goldberg, Saperstein and Lieberman — entered into a contract whereby they undertook to collect clothes for cleaning and dyeing from tailoring establishments, including the tailors formerly served by Saperstein and Lieberman while in the plaintiff's employment, and to deliver the clothes for actual cleaning to the Feldman Dye Works on a commission basis.

It will be noted from the contract that there is no affirmative covenant that the defendants will not enter into the same line of work and that they will not solicit business from the existing customers of the plaintiff. On the contrary, the contract already quoted seems to have anticipated that the drivers should have the absolute right to solicit trade from the same line of customers, the only limitation being that if they left plaintiff's employment of their own accord, that right was limited to commence at the period of six months after the severance of employment.

The respondent cites *Vulcan Detinning Co.* v. *Assmann* (185 App. Div. 399), which relates to trade secrets, and the case of *People's Coat, Apron & Towel Supply Co.* v. *Light* (171 id. 671), decided by this court and affirmed, 224 New York, 727, and other like cases, as authorities to sustain the judgment. These cases are easily distinguished. In the first place, there is nothing secret about getting up a list of men and women who are in the tailoring business in Brooklyn. A casual reference to a business directory will give the whole list. Undoubtedly the plaintiff, through her drivers, solicited trade from a list of tailors, and undoubtedly the solicitation was the means of procuring the business. In the *Light* case, above quoted, there was evidence of a character which does not appear in the case at bar. There, as the writer pointed out in *New York Towel Supply Co., Inc.,* v. *Lally* (162 N. Y. Supp. 247), the outstanding fact was that the former employees were competing by means that were unquestionably fraudulent and unfair. The employees led the customers to believe that they still represented their employers, thus covertly seducing their employers' trade away. Mr. Justice PAGE in *Scott & Co., Inc.,* v. *Scott* (186 App. Div. 518) also pointed out other facts which appeared from the reading of the original record of the *Light* case.

In the absence of fraud, or in the absence of an express provision in the contract of employment not to go in business or to solicit the former customers of the employer, the employee has a right to embark on his own enterprise and to try to build up his own business by direct solicitation of his former master's customers and others. In the case of *Boosing* v. *Dorman* (210 N. Y. 529), affirming, without opinion, a judgment entered upon the report of a referee (148 App. Div. 824), the court approved the doctrine just stated. The referee in the *Boosing* case was former Justice KENEFICK, who very aptly said: " In this case we are asked to go further than any reported case, and to say that a salesman calling upon well-known dealers and soliciting orders and delivering goods for his master and thereby acquiring a personal knowledge and influence with his customers shall be forever, after the termination of his employment, debarred from dealing with the same customers for his own benefit. In other words, according as he is successful as a salesman in his master's employ, just so far is his sphere of usefulness limited should he embark on a business venture on his own account in the same line. I know of no principle of law which sustains such a theory, and while an individual may expressly contract to restrain his activities in trade, there is no such contract implied in the ordinary contract of employment."

For these reasons the judgment should be reversed on the law and the complaint dismissed, with costs, no matter which view is taken of the cause of action. If we take the view that the plaintiff evidently had in mind when the complaint was drawn, then the defendants should have been enjoined for six months from March 6, 1922, and that time has long since expired. On the other hand, if we adopt the trial judge's view, that the contract of employment has nothing to do with the rights of the parties, but that in some way they became plaintiff's employees, then there is no proof of any affirmative covenant on the part of the employees, limiting their future activities, and no proof of unfair competition or fraud.

KELLY, P. J., MANNING, YOUNG and KAPPER, JJ., concur.

Judgment reversed on the law, and judgment directed for the defendants dismissing the complaint, with costs.