CHEVRON U.S.A. INC.,
Plaintiff-Appellant and
Cross-Appellee,

v.

ROXEN SERVICE, INC., Beneficial Oil Co., Inc. and Robert C. Sturm, Defendants-Appellees and Cross-Appellants.

No. 461, Dockets 86–7714, 86–7844.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1986.

Decided March 4, 1987.

Thomas E. Albright, New York City (Baer Marks & Upham and George H. Colin, New York City, of counsel), for plaintiff-appellant and cross-appellee.

Joseph DiBenedetto, New York City (Cole & Deitz, Sharon A. McCloskey and Eric M. Wagner, New York City, of counsel), for defendants-appellees and cross-appellants.

\* Honorable Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and LASKER, Senior District Judge.\*

VAN GRAAFEILAND, Circuit Judge:

Following a jury trial before Judge Mishler in the United States District Court for the Eastern District of New York, Roxen Service, Inc., Beneficial Oil Co., Inc., and Robert C. Sturm (defendants) were found liable in the amount of $717,586.83 for breach of a restrictive covenant in a contract with Gulf Oil Corporation, predecessor in interest to plaintiff Chevron U.S.A. Inc., and for tortious interference with customer contracts of Gulf. Defendants have appealed from the judgment, and plaintiff has appealed from the district court's order staying execution on the judgment pending appeal. We vacate the judgment and remand for a new trial. This makes moot the appeal from the order staying execution.

Prior to June 6, 1957, a company called Roxen Utilities, Inc., located in Oceanside, Long Island, supplied its customers with home heating oil through defendant Roxen Service, Inc. (Roxen). Roxen also installed and serviced oil burners for Roxen Utilities. The shares of Roxen Utilities and three sister corporations involved in heating and air conditioning were owned by Henry J. Schwindt, who is not a party to this action. The shares of Roxen were owned by Robert Zufall, Schwindt's son-in-law. On April 2, 1957, Schwindt agreed to sell all of the assets of his companies to Gulf Oil Corporation. These assets included "all degree-day and other records relating to heating oil ... and oil burner service customers", which information Roxen Utilities had provided Roxen in the ordinary course of business.

The actual conveyance to Gulf, which took place on June 6, 1957, was not from Schwindt, but was directly from the four companies which Schwindt owned. On the same day, Zufall sold all of his Roxen stock to defendant Sturm, a Roxen employee.

Sturm borrowed money from Gulf to assist him in financing the purchase, and repaid it in full by 1971. Thereafter, Sturm acquired defendant Beneficial Oil Co., a small supplier of home fuel oil.

Following Sturm's purchase of Roxen, he entered into a one-year, automatically renewable Oil Burner Installation and Service Agreement with Gulf, in which it was agreed that Roxen would install new oil burners and perform the oil burner service work it had performed theretofore for Roxen Utilities. Sturm and Roxen also promised that, for five years after the agreement was terminated, they would not solicit or take away any of the customers of Gulf serviced by Roxen, assist any persons in doing so, or disclose to anyone the names or addresses of Gulf's customers.

Relations between Gulf, Sturm and Roxen continued without incident for the next twenty-six years. As did Roxen Utilities before it, Gulf provided Roxen with the names and addresses of new customers for Roxen to service. During this time, however, Gulf lost over half of its heating oil customers to competing suppliers. By 1983, Gulf had decided to move its retail and service operations from Roxen to Lewis Oil Company, a Gulf subsidiary. On March 31, 1983, Gulf notified Sturm that it intended to terminate the 1957 service agreement on June 1, 1983, which it did. Thereafter, customers of Gulf, who had been serviced by Roxen, began to receive unsolicited letters and telephone calls from Roxen and Beneficial encouraging them to leave Gulf. Some of these customers also received contracts for burner service by Roxen, which were *"not* valid unless all fuel oil requirements [were] purchased from Beneficial Oil Company, Inc." Gulf contends that as a result of the defendants' activities, it lost over 1,000 customers to Beneficial Oil and other heating oil suppliers.

Gulf's amended complaint alleges that Sturm and Roxen, in concert with Beneficial, violated the service agreement's covenant which prohibited them from soliciting and taking away Gulf's customers. The complaint also alleges that the defendants tortiously interfered with Gulf's customer contracts and breached certain fiduciary duties owed Gulf. We will discuss these claims separately.

## THE RESTRICTIVE COVENANT

The district judge did not instruct the jury to return a general verdict, but, instead, solicited answers to special interrogatories. *See* Fed.R.Civ.P. 49. However, the only questions submitted to the jury on the restrictive covenant issue were whether Roxen, Sturm and Beneficial solicited, diverted and took customers away from Gulf and the amount of the resultant damages. The district judge held as a matter of law that the five-year restrictive covenant was reasonable and binding and that Gulf's customer list was a protectable trade secret. He so instructed the jury.

In the district judge's decision denying defendants' motion to set aside the judgment, he began his explanation for this ruling with the unassailable statement of New York law that "[w]here the sale of a business includes the transfer of its good will, a reasonable covenant restricting the seller's right to compete with the purchaser will be enforced." The district judge did not explain, however, how this rule applied to Sturm and Roxen. Sturm and Roxen did not sell Roxen Utilities to Gulf. Their covenant did not purport to be enforceable upon the sale of a business but upon the termination of a service, which in this case occurred twenty-six years later. In this respect, the covenant is more like an employer-employee agreement than one resulting from the sale of a business. In either event, the covenant must be reasonable. The restraint imposed by a sale-of-business covenant must be no "more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought." *Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 271–72, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963). An employer-employee covenant will be enforced only if it is reasonably necessary to protect the employer's reasonable interests *and* "not unreason-

ably burdensome to the employee." *Reed, Roberts Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976); *Greenwich Mills Co. v. Barrie House Coffee Co.*, 91 A.D.2d 398, 401, 459 N.Y.S.2d 454 (1983).

■ Instead of discussing the question of reasonableness in the context of the instant case, the district judge turned from the contractual covenant not to compete to a judicially created, or implied, covenant which restrains the seller of a company's good will from soliciting business from his former customers. Under New York law, the purchaser of the good will of a business obtains the exclusive right "as between" himself and the seller to exploit established customer loyalty. *Mohawk Maintenance Co. v. Kessler*, 52 N.Y.2d 276, 286, 437 N.Y.S.2d 646, 419 N.E.2d 324 (1981). This implied covenant against the solicitation of former customers is neither limited by time nor subject to the test of reasonableness. *Id.* at 284–87, 437 N.Y.S.2d 646, 419 N.E.2d 324; *Alexander & Alexander Services, Inc. v. Maloff*, 105 A.D.2d 1066, 1067–68, 482 N.Y.S.2d 386 (1984). However, its concept of perpetual, unlimited restraint cannot be applied to one who, as here, is only a contractual convenantor and not a vendor at all. Nonetheless, referring to the implied covenant against solicitation, the district judge said:

> While such protection is usually afforded to the purchaser against the seller of the business, to prevent the seller "from recapturing and utilizing, by his competition, the good will of the very business which he transferred for value," ... it is no less important in the present case. Because Gulf was justified in protecting its purchase under these circumstances, the restrictive covenant was valid and enforceable.

In so holding, the district judge took the issue of the reasonableness of defendants' covenant right out of the picture. This was error.

■ The district judge said that he would reach the same conclusion "were [he] to view the Gulf/Roxen arrangement as an employer/employee relationship."

He supported this statement by holding as a matter of law that the identity of the householders who purchased heating oil from Gulf was a confidential trade secret. We believe this issue should have been submitted to the jury. The existence, *vel non*, of a trade secret usually is treated as a question of fact. *Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1063 (2d Cir.), *cert. denied*, ── U.S. ──, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Kaumagraph Co. v. Stampagraph Co.*, 235 N.Y. 1, 8–9, 138 N.E. 485 (1923); *Union Kol-Flo Corp. v. Basil*, 64 A.D.2d 861, 862, 407 N.Y.S.2d 359 (1978) *(mem.)*; *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir.1978); *Hulsenbusch v. Davidson Rubber Co.*, 344 F.2d 730, 734–35 (8th Cir.1965), *cert. denied*, 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966); 1 *Milgram on Trade Secrets* § 2.03 at 2–32 to 2–33 (1984).

We are not prepared to hold that a jury could not have found that there was nothing secret about the identity of Gulf's heating oil users in the vicinity of Oceanside. The market for heating oil in this area was well established, the identity of oil users was a matter of public record, and sales of heating oil did not depend upon the peculiar tastes of individual consumers. In other situations, not unlike the instant one, attempts to treat customer lists as trade secrets have been rejected. *See, e.g., Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 392–94, 328 N.Y.S.2d 423, 278 N.E.2d 636 (1972) (individual users of building maintenance supplies); *Altana, Inc. v. Stuart Schansinger*, 111 A.D.2d 199, 200, 489 N.Y.S.2d 84 (1985) *(mem.)* (wholesale purchasers of drugs); *Gaynor & Co. v. Stevens*, 61 A.D.2d 775, 402 N.Y.S.2d 398 (1978) *(mem.)* (customers of advertising agency); *S. Tepfer & Sons, Inc. v. Zschaler*, 25 A.D.2d 786, 269 N.Y.S.2d 552 (1966) *(mem.)* (manufacturers using machined metal parts); *Hudson Valley Propane Corp. v. Byrne*, 24 A.D.2d 908, 264 N.Y.S.2d 416 (1965) *(mem.)* (users of bottled gas in the Hudson Valley); *Abdallah v. Crandall*, 273 A.D. 131, 133–34, 76 N.Y.S.2d 403 (1948) (milk users in Cortland and Homer); *Goldberg v. Goldberg*, 205 A.D. 435, 438, 200 N.Y.S. 3

(1923) (tailoring businesses in Brooklyn); *Boosing v. Dorman*, 148 A.D. 824, 827, 133 N.Y.S. 910 (1912) (retail dealers in butter and eggs in Buffalo), *aff'd*, 210 N.Y. 529, 103 N.E. 1121 (1913) *(mem.)*. The jurors in the instant case well might have found that no actual secrecy surrounded the names of the purchasers of heating oil from Gulf. The issue should have been submitted to them for decision.

## TORTIOUS INTERFERENCE WITH CONTRACT

The district court submitted only two questions to the jury relative to this cause of action. The first asked whether the defendants intentionally caused customers to terminate deliveries of fuel oil under contracts they had with Gulf, and the second asked whether defendants' conduct was "calculated to solicit, divert and take away Gulf customers and were the acts done maliciously, wantonly and in reckless disregard of Gulf's rights." The jury answered "yes" to the first question and "no" to the second. The jury was not asked to state what damages resulted from whatever tortious interference was found to have taken place. The only question to the jury relative to compensatory damages referred solely and specifically to the breach of the restrictive covenant. While, obviously, plaintiff is not entitled to a double recovery on damages, it does not follow that the damages in the two causes of action are the same.

■ The record is distressingly silent as to the enforceable terms of the many heating oil contracts between Gulf and its customers. The one "Self-Renewing Oil Agreement" which plaintiff offered in evidence does not state what contract period would be "self-renewed", or for how long; nor does it state what the terms of the "self-renewed" agreement would be. It appears that customer heating agreements could have been terminated by the customer at the end of any heating season. Nonetheless, the district court charged the jury that Gulf "had a right to the performance of those contracts ... the right to supply oil and the homeowner's obligation to pur-

chase from Gulf pursuant to the contract." We think that this charge gave Gulf more than it was entitled to.

The actual, legal interest under a contract which may be avoided by the other contracting party at his election is not materially different from that under a contract which the other contracting party may terminate at will. In both instances the party seeking to impose liability enjoys no legally enforceable right to performance; his interest is a mere expectancy—a hope of future contractual relations.

.    .    .

Where contracts terminable at will have been involved, we have upheld complaints and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering were wrongful as consisting of fraudulent representations or threats or as in violation of a duty of fidelity owed to the plaintiff by the defendant by reason of a relation of confidence existing between them. Absent some such misconduct, no liability has resulted to one whose actions have induced nonperformance of a contract deemed to be voidable and thus unenforceable.

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 193–94, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980) (citations omitted). As the jury found, there was no "such misconduct" in the instant case.

If, as it appears, Gulf's right to enforce its customer agreement was terminable, at least at the end of every heating season, the enforcement period was not coterminous with the five-year period of the restrictive covenant. It follows that the damages which would result from interference with the former are not necessarily the same as those which would result from violation of the latter. In any event, since our remand for retrial of the cause of action for breach of covenant requires a new determination on the question of damages arising from the alleged breach, no valid finding of damages remains which, even in theory, might be adopted for the

tortious interference cause of action. Assuming without deciding that Gulf has a valid cause of action for tortious interference, a proper finding as to the damages resulting from such tort has not been made. Justice requires that the action be retried in its entirety.

Because we are vacating the judgment and remanding for a new trial, we see no need to address the parties' other claims of error. Chevron's appeal from the district court's order granting a stay is dismissed as moot. The judgment in favor of Chevron is vacated, and the matter is remanded to the district court for retrial.