■ CSI GROUP, LLP, et al., Respondents, v MARTIN W. HARPER et al., Appellants, et al., Defendants. [61 NYS3d 592]—

In an action, inter alia, to recover damages for breach of contract, the defendants Martin W. Harper, Martin Harper Associates, and Broadway Wealth Management, LLC, doing business as Broadway Asset Management, appeal, as limited by their brief, from so much of an order of the Supreme Court,

Richmond County (Straniere, J.), dated April 1, 2015, as, upon reargument, adhered to its original determination in an order dated November 3, 2014, denying their prior motion for summary judgment dismissing the first through eleventh and the thirteenth causes of action, and so much of the twelfth cause of action as alleged the conversion of clients and the revenue from those clients insofar as asserted against them, and on the issue of liability on the counterclaim of the defendant Martin W. Harper.

Ordered that the order dated April 1, 2015, is reversed insofar as appealed from, on the law, with costs, and, upon reargument, the appellants' prior motion for summary judgment dismissing the first through eleventh and the thirteenth causes of action, and so much of the twelfth cause of action as alleged the conversion of clients and the revenue from those clients insofar as asserted against them, and on the issue of liability on the counterclaim of the defendant Martin W. Harper is granted.

On October 16, 2007, the defendant Martin W. Harper sold his tax preparation, accounting, and financial management practice, including his client list, the name "Harper Associates, LLC," and an office lease in Hicksville to the plaintiff CSI Group, LLP (hereinafter CSI). The purchase agreement provided that the total purchase price was allocated 90% to the client list and 10% to goodwill. The closing date, as defined in the purchase agreement, was the date it was signed, October 16, 2007. As part of the purchase price, Harper agreed to work for CSI for a period of five years and to restrictive covenants not to compete with the plaintiffs and not to solicit any "tax client" for a period of five years from the closing date. The purchase agreement also provided that if a payment default by CSI persisted for 30 days, all remaining payments would be accelerated and Harper would be entitled to recover his attorney's fees incurred to collect the payments due.

For the next five years, Harper worked exclusively for CSI out of his former Hicksville office. On October 16, 2012, Harper terminated his association with the plaintiffs. In January 2013, Harper began to solicit and serve some of his former clients in space leased in the same office building through his new firm, Broadway Wealth Management, LLC, doing business as Broadway Asset Management (hereinafter Broadway Wealth).

The plaintiffs then commenced this action against, among others, Harper, Martin Harper Associates, and Broadway Wealth (hereinafter collectively the appellants), alleging 13 causes of action, including breach of contract, fraud, unfair

competition, and conversion. In an order dated November 3, 2014, the Supreme Court denied the appellants' motion for summary judgment dismissing the first through eleventh and thirteenth causes of action, and so much of the twelfth cause of action as alleged the conversion of clients and the revenue from those clients insofar as asserted against them, and on the issue of liability on a counterclaim interposed by Harper. In the order appealed from, the court, upon reargument, adhered to the original determination.

The Supreme Court, upon reargument, should have awarded the appellants summary judgment dismissing the first cause of action, which alleged that the appellants breached the purchase agreement by soliciting and servicing their former clients. Because Harper sold his practice to CSI, and CSI acquired the goodwill of Harper Associates, LLC, in the transaction, the enforceability of the nonsolicitation clause against Harper is evaluated pursuant to the standard applicable to the sale of a business rather than the "stricter standard of reasonableness" applicable to employment contracts (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307 [1976]; *see Genesee Val. Trust Co. v Waterford Group, LLC*, 130 AD3d 1555, 1557-1558 [2015]; *Weiser LLP v Coopersmith*, 51 AD3d 583, 583-584 [2008]; *Kraft Agency v Delmonico*, 110 AD2d 177, 182-183 [1985]). When the goodwill of a business is sold, irrespective of any term in the contract, the seller is prevented by an "implied covenant" from depreciating the value of the goodwill by approaching his former customers and attempting to regain their patronage (*Mohawk Maintenance Co. v Kessler*, 52 NY2d 276, 284 [1981]). The goodwill of a business, an intangible asset which may be transferred from the seller to the purchaser, has been defined as the right of the purchaser "to expect that the firm's established customers will continue to patronize the business" (*id.* at 285; *see Purchasing Assoc. v Weitz*, 13 NY2d 267, 271 [1963]; *Kraft Agency v Delmonico*, 110 AD2d at 181).

The appellants established their prima facie entitlement to summary judgment dismissing the first cause of action through the submission of evidence demonstrating that Harper did not solicit his former clients or perform any tax, financial, or accounting services outside of his employment with CSI prior to October 16, 2012. In opposition, the plaintiffs failed to raise a triable issue of fact. The plaintiffs' reliance upon *Mohawk Maintenance Co. v Kessler* (52 NY2d 276 [1981]), wherein an implied covenant was imposed upon the seller of a business to permanently refrain from soliciting former customers after the sale of a business and its goodwill, is misplaced. The unlimited

implied restrictions set forth therein are inapplicable, where, as here, the parties specifically negotiated and expressly agreed to impose a less onerous restriction upon the seller after the sale, and to thereby forgo the implied covenant recognized in *Mohawk*, by entering into an express nonsolicitation agreement which was of limited duration and restricted only to "tax clients" (*see MGM Ct. Reporting Serv. v Greenberg*, 74 NY2d 691 [1989]; *First Am. Tit. Ins. Co. of N.Y., Inc. v Benchmark Tit. Agency LLC*, 48 AD3d 327 [2008]; *Mitel Telecommunications Sys. v Napolitano*, 226 AD2d 165, 165 [1996]; *Goldome Corp. v Wittig*, 221 AD2d 931, 932 [1995]).

Moreover, the Supreme Court, upon reargument, should have granted those branches of the appellants' motion which were to dismiss the second cause of action, which alleged breach of the implied covenant of good faith and fair dealing, and the fifth cause of action, which alleged misappropriation of funds, as the appellants demonstrated, prima facie, that they are duplicative of the breach of contract cause of action (*see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 319-320 [1995]; *Cortazar v Tomasino*, 150 AD3d 668 [2017]; *Refreshment Mgt. Servs., Corp. v Complete Off. Supply Warehouse Corp.*, 89 AD3d 913, 915 [2011]; *Fada Intl. Corp. v Cheung*, 57 AD3d 406 [2008]). Furthermore, the appellants demonstrated their prima facie entitlement to summary judgment dismissing the thirteenth cause of action, which alleged unjust enrichment, as the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 23 [2005]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]). In opposition, the plaintiffs failed to raise a triable issue of fact.

The appellants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the third cause of action, which alleged fraudulent inducement, by establishing, through the submission of the deposition transcript of CSI's principal, who negotiated the sale with Harper, that no misrepresentations or omissions of fact were made by Harper that induced CSI to enter into the purchase agreement (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *Blagio Rest., Inc. v C.E. Props., Inc.*, 127 AD3d 1006, 1008 [2015]; *River Ridge Living Ctr., LLC v ADL Data Sys., Inc.*, 98 AD3d 724, 725 [2012]). Moreover, while the plaintiffs alleged that Harper misrepresented his intent to retire at the end of the five-year term of the purchase agreement, such a representation does not constitute actionable fraud because it is a

mere expression of future expectations (*see Blagio Rest., Inc. v C.E. Props., Inc.*, 127 AD3d at 1008; *Deutsche Bank Natl. Trust Co. v Sinclair*, 68 AD3d 914, 916 [2009]; *Adrien v Estate of Zurita*, 29 AD3d 498 [2006]). In opposition, the plaintiffs failed to raise a triable issue of fact. Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing the fraudulent inducement cause of action.

The Supreme Court, upon reargument, also should have granted that branch of the appellants' motion which was for summary judgment dismissing the fourth cause of action, which alleged negligent misrepresentation. A cause of action alleging negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 180 [2011]; *J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]; *Parrott v Coopers & Lybrand*, 95 NY2d 479, 484 [2000]). The appellants demonstrated, prima facie, that there was no fiduciary or special relationship between Harper and the plaintiffs in this arm's length transaction (*see Lunal Realty, LLC v DiSanto Realty, LLC*, 88 AD3d 661, 663 [2011]; *Gardianos v Calpine Corp.*, 16 AD3d 456 [2005]; *Atkins Nutritionals v Ernst & Young*, 301 AD2d 547, 548 [2003]). In opposition, the plaintiffs failed to raise a triable issue of fact.

With respect to the sixth cause of action, which alleged tortious interference with contractual relations, such a cause of action requires the existence of a valid contract between the plaintiff and a third party, the defendant's knowledge of that contract, the defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom (*see Lama Holding Co. v Smith Barney*, 88 NY2d at 424-425; *Israel v Wood Dolson Co.*, 1 NY2d 116, 120 [1956]). The appellants demonstrated their prima facie entitlement to judgment as a matter of law dismissing this cause of action by establishing that the plaintiffs had no contracts with their clients. The plaintiffs failed to raise a triable issue of fact in opposition to this showing (*see Pink v Half Moon Coop. Apts., S., Inc.*, 68 AD3d 739, 740 [2009]; *Dome Prop. Mgt., Inc. v Barbaria*, 47 AD3d 870 [2008]). Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing the sixth cause of action.

With respect to the eighth cause of action, which alleged a breach of the duty of loyalty, the appellants established their prima facie entitlement to judgment as a matter of law dismissing that cause of action by submitting evidence demonstrating that Harper did not, while in the employ of the plaintiffs, use the plaintiffs' time or facilities to form a competing entity (*see Island Sports Physical Therapy v Kane*, 84 AD3d 879 [2011]; *Beverage Mktg. USA, Inc. v South Beach Beverage Co., Inc.*, 58 AD3d 657, 658 [2009]), or solicit the plaintiffs' clients to patronize any competing entity (*see Mal Dunn Assoc. v Kranjac*, 145 AD2d 472 [1988]). Moreover, the appellants established, prima facie, that the plaintiffs' client list did not constitute a trade secret (*see Starlight Limousine Serv. v Cucinella*, 275 AD2d 704, 705 [2000]; *see generally Ashland Mgt. v Janien*, 82 NY2d 395, 407 [1993]). In opposition, the plaintiffs failed to raise a triable issue of fact, including as to whether Harper engaged in wrongful conduct (*see Starlight Limousine Serv. v Cucinella*, 275 AD2d at 705). Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing the eighth cause of action.

Moreover, the Supreme Court, upon reargument, should have directed dismissal of the seventh cause of action, alleging breach of the duty of honesty, as duplicative of the cause of action alleging breach of the duty of loyalty.

As to the ninth cause of action, alleging unfair competition, to establish such a cause of action, a plaintiff must demonstrate that the defendant wrongfully diverted the plaintiff's business to itself (*see Baldeo v Majeed*, 150 AD3d 942, 944 [2017]; *Robert I. Gluck, M.D., LLC v Kenneth M. Kamler, M.D., LLC*, 74 AD3d 1166 [2010]). The appellants demonstrated their prima facie entitlement to judgment as a matter of law dismissing this cause of action (*see Baldeo v Majeed*, 150 AD3d 942 [2017]). Harper testified at his deposition that after he left CSI, he compiled a list of his clients from memory and research, and was able to recall several hundred names of those he had serviced over many years. He testified that, while in CSI's employ, he did not write down or download any client lists or download any tax files from CSI computers. In opposition, the plaintiffs failed to raise a triable issue of fact as to whether the appellants wrongfully diverted business to themselves. Therefore, upon reargument, the appellants were entitled to summary judgment dismissing the ninth cause of action, alleging unfair competition (*see Baldeo v Majeed*, 150 AD3d at 944-945; *Waste Servs. v Jamaica Ash & Rubbish Removal Co.*, 262 AD2d 401, 402 [1999]).

The Supreme Court should have granted, upon reargument, that branch of the appellants' motion which was for summary judgment dismissing the tenth cause of action, which sought an accounting. The appellants established, prima facie, that after the termination of the purchase agreement, they were not in a fiduciary relationship with the plaintiffs, since Harper was not a party to any agreement placing him in a fiduciary relationship (*see Stein v Doukas*, 98 AD3d 1024, 1026 [2012]; *cf. Benfeld v Fleming Props., LLC*, 89 AD3d 654, 655 [2011]; *East End Labs., Inc. v Sawaya*, 79 AD3d 1095, 1096-1097 [2010]), and the plaintiffs failed to raise a triable issue of fact in opposition (*see Goldfine v Sichenzia*, 73 AD3d 854 [2010]).

The eleventh cause of action alleges that Harper published defamatory statements to "[c]ertain clients." CPLR 3016 (a) provides that in an action to recover damages for libel or slander, the particular words complained of shall be set forth in the complaint. A cause of action sounding in defamation which fails to comply with these special pleading requirements must be dismissed (*see Fusco v Fusco*, 36 AD3d 589, 590 [2007]; *Simpson v Cook Pony Farm Real Estate, Inc.*, 12 AD3d 496 [2004]). Failure to state the particular person or persons to whom the allegedly defamatory statements were made also warrants dismissal (*see Simpson v Cook Pony Farm Real Estate, Inc.*, 12 AD3d 496 [2004]). Here, the plaintiffs did not set forth the actual words complained of, nor did they specify the persons to whom Harper allegedly published the statements (*see id.; Gill v Pathmark Stores*, 237 AD2d 563 [1997]). Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing the eleventh cause of action.

The Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment dismissing so much of the twelfth cause of action, for conversion, as alleged that the appellants took CSI clients and converted the revenue from those clients. A cause of action alleging conversion should be dismissed when the plaintiff does not allege "legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights" (*Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 592 [2007]; *see Barker v Amorini*, 121 AD3d 823, 825 [2014]; *Daub v Future Tech Enter., Inc.*, 65 AD3d 1004, 1006 [2009]). "Moreover, the mere right to payment cannot be the basis for a cause of action alleging conversion since the essence of a conversion cause of action is the 'unauthorized

dominion over the thing in question' " (*Daub v Future Tech Enter., Inc.*, 65 AD3d at 1006, quoting *Fiorenti v Central Emergency Physicians*, 305 AD2d 453, 454-455 [2003]). In other words, "[t]angible personal property or specific money must be involved" (*Independence Discount Corp. v Bressner*, 47 AD2d 756, 757 [1975] [emphasis omitted]; *see AMF Inc. v Algo Distribs.*, 48 AD2d 352, 356-357 [1975]).

The appellants made a prima facie showing of entitlement to summary judgment by establishing that Harper did not solicit his former clients or compete with CSI prior to the expiration of the five-year term of the purchase agreement and that the right to clients cannot form the basis for a conversion cause of action (*see Whitman Realty Group, Inc. v Galano*, 41 AD3d at 592). In opposition, the plaintiffs failed to come forward with evidentiary facts showing that they had legal ownership or an immediate right of possession to specifically identifiable funds and that the appellants exercised an unauthorized dominion over such funds to the exclusion of the plaintiffs' rights (*see id.*; *Fiorenti v Central Emergency Physicians*, 305 AD2d at 454-455). The plaintiffs, at best, showed only a contractual right to payment where they never had ownership, possession, or control of the disputed funds (*see Castaldi v 39 Winfield Assoc.*, 30 AD3d 458 [2006]; *Soviero v Carroll Group Intl., Inc.*, 27 AD3d 276, 277 [2006]; *Interstate Adjusters v First Fid. Bank, N.J.*, 251 AD2d 232, 234 [1998]).

With respect to that branch of the appellants' motion which was for summary judgment on the issue of liability on Harper's counterclaim, Harper's submission of the purchase agreement and evidence that CSI had not paid the last two purchase price payments and expense payments demonstrated his prima facie entitlement to judgment as a matter of law on his counterclaim against CSI (*see Gianelli v RE/MAX of N.Y., Inc.*, 144 AD3d 861, 862-863 [2016]; *E. Tetz & Sons, Inc. v Polo Elec. Corp.*, 129 AD3d 1014, 1015 [2015]; *1375 Equities Corp. v Buildgreen Solutions, LLC*, 120 AD3d 783, 783 [2014]; *Proud Designs, Inc. v Whidden*, 90 AD3d 732, 733 [2011]; *Castle Oil Corp. v Bokhari*, 52 AD3d 762 [2008]), including his contractual claim for reasonable attorneys' fees incurred in recovering the payments (*see Yellow Book Sales & Distrib. Co., Inc. v Mantini*, 85 AD3d 1019, 1021 [2011]; *8109 Pizzeria of N.Y., Inc. v Polo Pizza One Corp.*, 67 AD3d 627, 629 [2009]; *Luis Lopez & Son's, Inc. v Dannie's Auto Care*, 61 AD3d 643 [2009]). In opposition, the plaintiffs failed to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *8109 Pizzeria of N.Y., Inc. v Polo Pizza One Corp.*, 67 AD3d at 629; *91 E. Main St.*

*Realty Corp. v Angelic Creations by Lucia*, 24 Misc 3d 25 [App Term, 2d Dept, 9th & 10th Jud Dists 2009]). Accordingly, the Supreme Court, upon reargument, should have granted that branch of the appellants' motion which was for summary judgment on the issue of liability on Harper's counterclaim. Austin, J.P., Hinds-Radix, Duffy and Connolly, JJ., concur.