ISS Action, Inc. v Tutor Perini Corp. (2019 NY Slip Op 01577)





ISS Action, Inc. v Tutor Perini Corp.


2019 NY Slip Op 01577


Decided on March 6, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 6, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
ROBERT J. MILLER, JJ.


2016-05400
 (Index No. 53046/14)

[*1]ISS Action, Inc., appellant,
v Tutor Perini Corporation, respondent.


Coti & Sugrue, New City, NY (Stephen R. Sugrue of counsel), for appellant.
Kaufman Dolowich Voluck LLP, Woodbury, NY (Andrew L. Richards and Megan E. Yllanes of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for fraudulent misrepresentation and unjust enrichment and for declaratory relief, the plaintiff appeals from an order of the Supreme Court, Westchester County (Linda S. Jamieson, J.), dated April 15, 2016. The order denied the plaintiff's motion for summary judgment on its first, third, and fourth causes of action and granted the defendant's cross motion for summary judgment dismissing the complaint.
ORDERED that the order is affirmed, with costs, and the matter is remitted to the Supreme Court, Westchester County, for the entry of a judgment, inter alia, making an appropriate declaration in accordance herewith.
The plaintiff alleged that the defendant entered into an agreement with the Port Authority of New York and New Jersey to make certain improvements to a runway at John F. Kennedy International Airport. The plaintiff further alleged that on July 31, 2009, it entered into an agreement (hereinafter the 2009 Agreement) with the defendant, pursuant to which the plaintiff was to provide security services at the job site. The 2009 Agreement set forth the various rates of compensation that the plaintiff was to receive in exchange for the security services. It also stated that those rates were "subject to New York State Sales Tax." The 2009 Agreement stated that "[t]he parties agree that as soon as they are able they will execute a completed contract subject to [the defendant's] terms and conditions."
The plaintiff alleged that it commenced performance in accordance with the 2009 Agreement and, in its first invoice to the defendant, it "included a charge for sales tax." The plaintiff alleged that the defendant paid the full amount of the first invoice, including the charge for sales tax. However, the plaintiff alleged that "one or more representatives" of the defendant informed the plaintiff that the security services it provided "were, as a matter of fact and law, exempt from New York State and local sales and use taxes."
The plaintiff alleged that the defendant subsequently provided the plaintiff with a New York State and Local Sales and Use Tax Contractor Exempt Purchase Certificate dated August 3, 2009 (hereinafter the Tax Exemption Certificate). The Tax Exemption Certificate, which was [*2]signed by an employee of the defendant, stated that "[t]he tangible personal property or service[s] being purchased" by the defendant were "exempt from sales and use tax because," and then listed a number of possible exemptions. The exemption which was marked on the Tax Exemption Certificate stated that "[t]he tangible personal property will be used . . . to improve real property . . . owned by an organization exempt under section 1116(a) of the Tax Law."
The plaintiff alleged that after it received the completed Tax Exemption Certificate, it refunded the sales tax paid by the defendant in connection with the first invoice and did not charge the defendant any further sales tax. A more formal subcontract between the two parties was executed on February 12, 2010 (hereinafter the 2010 Agreement). As relevant here, the 2010 Agreement provided that the plaintiff would be responsible for "all payments of taxes," including "sales and use taxes." The 2010 Agreement recited that it was "the entire agreement between the parties relating to the work covered hereby." The complaint alleged that "[i]n light of the representations made by [the defendant] . . . that the services being performed by [the plaintiff] on the runway [p]roject were exempt from sales and use taxes," the plaintiff signed the 2010 Agreement.
The plaintiff alleged that it continued to provide services to the defendant in connection with the runway project, and that the runway project was completed on November 1, 2011. A document titled "Final Release and Waiver of Lien" was executed by the plaintiff's representative on January 12, 2012, which "release[d] and forever discharge[d]" the defendant from "any and all claims, demands, liens and claims of lien whatsoever arising out of [the 2010 Agreement] and/or [the described] work."
In March of 2013, the plaintiff was audited by the New York State Department of Taxation and Finance, which determined that the plaintiff owed approximately $125,000 in back taxes plus interest with respect to the work it performed for the defendant. After the defendant refused the plaintiff's demands to pay the back taxes, the plaintiff commenced this action.
The plaintiff asserted four causes of action against the defendant. The first cause of action sought a declaration that the defendant was legally obligated to pay all sales tax, including interest and penalties, if any, owed as a result of the plaintiff's provision of services to the defendant. The second, third, and fourth causes of action sought to recover damages for breach of contract, unjust enrichment, and fraudulent misrepresentation, respectively.
The plaintiff subsequently moved for summary judgment on the first, third, and fourth causes of action. The defendant cross-moved for summary judgment dismissing the complaint. In the order appealed from, the Supreme Court denied the plaintiff's motion and granted the defendant's cross motion. The plaintiff appeals.
"In order to prevail in an action based upon fraudulent representations, whether for rescission of a contract or in tort for damages, the plaintiff must establish a misrepresentation of a material fact, which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party, and injury" (Sitar v Sitar, 61 AD3d 739, 741; see Lama Holding Co. v Smith Barney, 88 NY2d 413, 421; Hecker v Paschke, 133 AD3d 713, 716).
A cause of action alleging fraudulent misrepresentation requires that reliance be reasonable (see Epifani v Johnson, 65 AD3d 224, 230). "[I]f the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him [or her] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he [or she] must make use of those means, or he [or she] will not be heard to complain that he [or she] was induced to enter into the transaction by misrepresentations" (Schumaker v Mather, 133 NY 590, 596; see ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1044; DDJ Mgt., LLC v Rhone Group L.L.C., 15 NY3d 147, 154).
Moreover, " [w]hen the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it'" (Centro Empresarial Cempresa S.A. v [*3]América Móvil, S.A.B. de C.V., 17 NY3d 269, 279, quoting Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 100). Under such circumstances, the party " cannot reasonably rely on such representations without making additional inquiry to determine their accuracy'" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 279, quoting Global Mins. & Metals Corp. v Holme, 35 AD3d at 100).
Here, the fourth cause of action sought to recover damages for fraudulent misrepresentation. The complaint alleged that the defendant's erroneous representations as to the tax-exempt status of the plaintiff's services induced the plaintiff to enter into the 2010 Agreement and forgo the collection of taxes from the defendant in connection with the runway project. However, the defendant established, prima facie, that any such reliance was unreasonable as a matter of law. The plaintiff does not allege that the defendant was in the exclusive possession of any facts which bore upon the tax-exempt status of the plaintiff's work. To the contrary, the plaintiff was aware of the nature of the services it was providing to the defendant. As such, the only representation upon which the plaintiff could have relied was the defendant's legal opinion as to the taxable status of the plaintiff's work. In that regard, the plaintiff was in an equal position to discover the applicable law. Furthermore, the Tax Exemption Certificate issued by the defendant was, on its face, inapplicable to the plaintiff's work given that the plaintiff was providing security services to the defendant, rather than "tangible personal property." Under such circumstances, a " heightened degree of diligence is required'" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 279, quoting Global Mins. & Metals Corp. v Holme, 35 AD3d at 100), and yet the plaintiff failed to utilize the means it had to determine the truth of the defendant's legal representations (see Hecker v Paschke, 133 AD3d at 716-717; Sitar v Sitar, 61 AD3d at 742; Friedler v Palyompis, 44 AD3d 611, 611-612; Orlando v Kukielka, 40 AD3d 829, 831-832; Curran, Cooney, Penney v Young & Koomans, 183 AD2d 742, 743-744).
In opposition to the defendant's prima facie showing, the plaintiff failed to raise a triable issue of fact as to whether its reliance upon the alleged misrepresentations was justified under the circumstances. Accordingly, we agree with the Supreme Court's grant of that branch of the defendant's cross motion which was for summary judgment dismissing the fourth cause of action (see Hecker v Paschke, 133 AD3d at 716-717; Sitar v Sitar, 61 AD3d at 742; Friedler v Palyompis, 44 AD3d at 611-612; Orlando v Kukielka, 40 AD3d at 831-832; Curran, Cooney, Penney v Young & Koomans, 183 AD2d at 743-744). For the same reasons, we agree with the court's denial of that branch of the plaintiff's motion which was for summary judgment on that cause of action.
The third cause of action asserted in the complaint alleged unjust enrichment. The doctrine of unjust enrichment invokes an "obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142; see Pappas v Tzolis, 20 NY3d 228, 234). Accordingly, "a party may not recover in quantum meruit or unjust enrichment where the parties have entered into a contract that governs the subject matter" (Cox v NAP Constr. Co., Inc., 10 NY3d 592, 607; see Pappas v Tzolis, 20 NY3d at 234).
Here, the defendant established, prima facie, that the payment of applicable taxes was expressly provided for in the parties' agreements (see CSI Group, LLP v Harper, 153 AD3d 1314; Rayham v Multiplan, Inc., 153 AD3d 865, 868-869). Indeed, the plaintiff's complaint alleges as much. In opposition, the plaintiff failed to raise a triable issue of fact. Accordingly, we agree with the Supreme Court's grant of that branch of the defendant's cross motion which was for summary judgment dismissing the third cause of action (see CSI Group, LLP v Harper, 153 AD3d 1314; Rayham v Multiplan, Inc., 153 AD3d at 868-869). For the same reasons, we agree with the court's denial of that branch of the plaintiff's motion which was for summary judgment on that cause of action.
The second cause of action sought to recover damages for breach of contract. The complaint alleged that the defendant breached the 2009 Agreement by failing to pay applicable sales tax for services rendered pursuant to that agreement, and that the plaintiff was damaged in the amount of back taxes, and interest imposed thereon, which the New York State Department of [*4]Taxation and Finance sought to recover from the plaintiff after the audit.
The defendant established that the unpaid taxes which New York State sought to recover from the plaintiff accrued on invoices which were dated after the 2010 Agreement was executed by the parties. The 2010 Agreement required the plaintiff to pay all applicable taxes. Accordingly, the defendant established, prima facie, its entitlement to summary judgment dismissing the second cause of action. In opposition, the plaintiff failed to raise a triable issue of fact as to whether any of the back taxes accrued for work that was performed prior to the execution of the 2010 Agreement such that the terms of the 2009 Agreement would control. Accordingly, we agree with the Supreme Court's grant of that branch of the defendant's cross motion which was for summary judgment dismissing the second cause of action (see Alvarez v Prospect Hosp., 68 NY2d 320, 324).
Finally, inasmuch as the defendant established, as a matter of law, that it was not required to pay the disputed taxes under any theory advanced by the plaintiff, we agree with the Supreme Court's denial of that branch of the plaintiff's motion which was for summary judgment on the first cause of action, and grant of that branch of the defendant's cross motion which was for summary judgment dismissing the first cause of action. Since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Westchester County, for the entry of a judgment, inter alia, declaring that the defendant is not legally obligated to pay all sales tax, including interest and penalties, if any, owed as a result of the plaintiff's provision of services to the defendant (see Lanza v Wagner, 11 NY2d 317).
BALKIN, J.P., CHAMBERS, COHEN and MILLER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court